1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone:  (650) 697-6000
   Facsimile:  (650) 692-3606
6
7  GARY KLEIN (admitted *pro hac vice*)
   klein@kkcllp.com
8  SHENNAN KAVANAGH (admitted *pro hac vice*)
   kavanagh@kkcllp.com
9  KEVIN COSTELLO (admitted *pro hac vice*)
   costello@kkcllp.com
10 **KLEIN KAVANAGH COSTELLO, LLP**
   85 Merrimac Street, 4th Floor
11 Boston, MA 02114
   Telephone:  (617) 357-5500
12 Facsimile:  (617) 357-5030

13 *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARIA CAMPUSANO**, an individual; **NATHANIEL PERRONE**, an individual; **EMILY PERRONE**, an individual; **PATSY VAUGHN**, an individual; **WILLIAM ROBERSON**, an individual; **CHRISTINA PEREZ**, an individual; **CRAIG IDEN**, an individual; **RITA JACKSON**, an individual; **TERRI KWAKE**, an individual; **DENIS INGHAM**, an individual and **ELEANOR MURPHY**, an individual, on behalf of themselves and all similarly situated individuals,<br><br>                    Plaintiffs,<br><br>        v.<br><br>**BANK OF AMERICA N.A., for itself and as successor by merger TO BAC HOME LOANS SERVICING, L.P.**<br><br>                    Defendants. | Case No. 2:11-CV-04609-AHM (JCx)<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:  Hon. A. Howard Matz<br>Courtroom:  14<br><br>**LEAVE TO FILE GRANTED JUNE 18, 2012**<br><br>BY FAX |

**THIRD AMENDED CLASS ACTION COMPLAINT**
Case No. 2:11-cv-04609-AHM (JCx)

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  PARTIES .............................................................................................4

III. FACTUAL BACKGROUND ...............................................................5

    A.   The Foreclosure Crisis ................................................................5

    B.   Bank of America's Loan Modification Programs .......................6

IV.  FACTUAL ALLEGATIONS ...............................................................8

    A.   Plaintiff Maria Campusano ..........................................................8

    B.   Plaintiffs Nathaniel and Emily Perrone ....................................17

    C.   Plaintiff Patsy Vaughn ...............................................................24

    D.   Plaintiffs William Roberson and Christina Perez .....................38

    E.   Plaintiff Craig Iden.....................................................................47

    F.   Plaintiff Rita Jackson .................................................................54

    G.   Plaintiff Terri Kwake ..................................................................61

    H.   Plaintiffs Denis Ingham and Eleanor Murphy ..........................67

    I.   General Factual Allegations .......................................................74

V.   CLASS ALLEGATIONS ...................................................................75

VI.  CAUSES OF ACTION .......................................................................78

    FIRST CAUSE OF ACTION
    Breach of Contract ..............................................................................78

    SECOND CAUSE OF ACTION
    Injunctive Relief..................................................................................81

    THIRD CAUSE OF ACTION
    Violations of the California Business & Professions Code §§ 17200 et seq.
    By Plaintiff Craig Iden on behalf of himself and a California Class of
    Borrowers............................................................................................82

    FOURTH CAUSE OF ACTION
    Violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A
    and Applicable Regulations By Plaintiffs Maria Campusano, Rita Jackson,
    Denis Ingham and Eleanor Murphy on behalf of themselves and a
    Massachusetts Class of Borrowers.....................................................84

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIFTH CAUSE OF ACTION
Violations of the Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq*. and Applicable Regulations By Plaintiff Terri Kwake on behalf of herself and an Oregon Class of Borrowers ...................................................... 86

SIXTH CAUSE OF ACTION
Violations of the Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, §§2451 through 2480g and Applicable Regulations By Plaintiffs William Roberson and Christina Perez on behalf of herself and a Vermont Class of Borrowers .88

SEVENTH CAUSE OF ACTION
Violations of the Washington Consumer Protection Act, R.C.W. 19.86.010 et seq. By Plaintiffs Nathaniel Perrone and Emily Perrone on behalf of themselves and a Washington Class of Borrowers ........................................... 91

**PRAYER FOR RELIEF** ................................................................... 93

**DEMAND FOR JURY TRIAL** ................................................... 94

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

1.      Maria Campusano, Nathaniel and Emily Perrone, Patsy Vaughn, William Roberson and Christina Perez, Craig Iden, Rita Jackson, Terri Kwake, and Denis Ingham and Eleanor Murphy, bring this suit on behalf of themselves and a class of similarly situated homeowners who reside in the United States ("Plaintiffs") to challenge Bank of America N.A., for itself and as successor by merger to BAC Home Loans Servicing, L.P. ("Defendants" or "BOA") systemic breaches of the terms of permanent mortgage loan modification agreements ("Agreements").

2.      Plaintiffs are homeowners whose mortgage loans were contractually modified by BOA. They and others like them received and executed Loan Modification Agreements with BOA and began making the contractually due monthly mortgage payments.

3.      The purpose of modifying mortgage loans to make them more affordable is to "keep borrowers in their homes." Bank of America, Annual Report (Form 10-K), at 6 (2010). When President Obama signed the American Recovery and Reinvestment Act into law in 2009, which included the Homeowner Affordability and Stability Plan, he declared, "[w]e must stem the spread of foreclosures and falling home values for all Americans, and do everything we can to help responsible homeowners stay in their homes." White House Website: *available at* http://www.whitehouse.gov/blog/09/02/18/Help-for-homeowners/ (last viewed on May 26, 2010).

4.      Mortgage loans are modified in a variety of ways, including interest rate reductions, capitalization of past due amounts, principal forbearance, principal forgiveness, payment extensions, extension of loan terms, waiver of certain fees and usually involve a combination of any or all of these factors.

5.      Over the past three years, BOA has entered into approximately 775,000 permanent loan modification Agreements with homeowners. Bank of

1   America, Annual Report (Form 10-K), at 4 (2010).

2       6.      BOA has and continues to breach the Agreements by failing to

3   implement the terms of Plaintiffs' and other homeowners' permanent loan

4   modifications. Among other things, BOA does not capitalize arrearage amounts

5   for past due payments, interest, fees and escrow balances into homeowners'

6   modified principal balances when required under the Agreements. Rather, it

7   carries through some or all of these amounts as immediately due and owing in full

8   on homeowners' loan accounts after the Agreements become effective. Where

9   BOA does capitalize amounts required under the Agreements, it double-charges

10  homeowners for the capitalized funds by simultaneously treating the funds as

11  immediately due and owing in full.  BOA also does not implement the modified

12  interest rates and other loan terms provided for under the Agreements.

13      7.      BOA breaches the Agreements by attempting to collect and

14  collecting amounts that are not contractually due under the Agreements, including,

15  without limitation, past due payments, interest, late fees, default-related fees and

16  costs such as property inspection fees, property preservation fees, appraisal fees,

17  title report fees, recording fees and/or subordination fees, foreclosure fees and

18  costs and escrow account charges.

19      8.      BOA's failure to comply with the terms of the Agreements is

20  reflected in the monthly statements and other correspondence that BOA sends to

21  Plaintiffs and others after the Agreements have become effective, which contain

22  wrong information about the terms of the modified loans and the amounts

23  homeowners are contractually obligated to pay.

24      9.      BOA knows or should know that it breaches its Agreements with

25  homeowners because Plaintiffs and others have contacted and continue to contact

26  BOA by telephone and in writing to notify BOA of the errors on their accounts in

27  an effort to get them corrected.

28      10.     As a result of BOA's breaches, thousands of homeowners like

**THIRD AMENDED CLASS ACTION COMPLAINT**                                      2
Case No. 2:11-cv-04609-AHM (JCx)

1   Plaintiffs are being forced into default on affordable modified mortgage loans.

2   Instead of getting a fresh start after proving their financial qualifications and

3   ability to pay modified mortgage payments, and making the payments, BOA

4   routinely disavows the Agreements, leaving homeowners doomed for financial

5   failure. BOA's breaches leave homeowners with a Hobson's choice - to pay the

6   improper amounts BOA is attempting to collect in violation of the Agreements, or

7   lose their homes to foreclosure.

8       11.     BOA's conduct is unlawful, unfair, and/or fraudulent because its has

9   engaged in systematic breaches of mortgage loan contracts, the result of which has

10  caused wrongful foreclosure actions against homeowners who are making

11  payments under the Agreements, inaccurate credit reporting that will have a long-

12  term negative impact on borrowers' credit ratings, egregious refusal to rectify its

13  errors after being repeatedly informed by borrowers and others of its breaches and

14  unrestrained and unwarranted collection activity through use of an telephone

15  autodialer. These are all aggravating circumstances that go beyond a mere breach

16  of contract.

17      12.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §

18  1332 because the action is between parties that are citizens of different states and

19  because the amount in controversy is greater than $75,000. Prior to July 1, 2011,

20  BAC Home Loans Servicing, L.P. was a subsidiary of Bank of America, N.A.

21  Effective July 1, 2011, BAC Home Loans Servicing, L.P. merged with and into

22  Bank of America, N.A. It is located at 4500 Park Granada, Calabasas, California

23  91302. Defendant, Bank of America, is a mortgage lender and servicer with

24  headquarters at 101 Tryon Street, Charlotte, North Carolina 28255. Plaintiff,

25  Maria Campusano is a citizen of Massachusetts. Plaintiffs, Nathaniel and Emily

26  Perrone are citizens of Washington. Plaintiff, Patsy Vaughn is a citizen of

27  Georgia. Plaintiffs, William Roberson and Christina Perez own a home in

28  Vermont. Plaintiff, Craig Iden is a citizen of California. Plaintiff, Rita Jackson is a

1   citizen of Massachusetts. Plaintiff, Terri Kwake is a citizen of Oregon. Plaintiffs,

2   Denis Ingham and Eleanor Murphy are citizens of Massachusetts.

3        13.    This Court's jurisdiction is also proper here under the Class Action

4   Fairness Act, 28 U.S.C. 1332(d), because based on the size of the modifications at

5   issue, Plaintiffs believe the amount in controversy exceeds $5 million. In the

6   alternative, Plaintiffs believe the amount in controversy exceeds $5 million based

7   on the equity loss that could result to putative class members if they were to lose

8   their homes to foreclosure as a result of BOA's failure to honor permanent loan

9   modifications.

10       14.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because

11   the unlawful practices originated and were implemented in this District and BOA

12   regularly conducts business in California.

13                            **II.    <u>PARTIES</u>**

14       15.    Plaintiff, Maria Campusano ("Ms. Campusano") is an individual who

15   resides at 5 Holton Street, Lawrence, Massachusetts 01841.

16       16.    Plaintiffs, Nate and Emily Perrone (the "Perrones") are a married

17   couple residing at 800 Highwood Drive Southwest, Issaquah, Washington, 98027.

18       17.    Plaintiff, Patsy Vaughn ("Ms. Vaughn") is an individual who resides

19   at 1403 Sugar Valley Road, Cartersville, Georgia 30120.

20       18.    Plaintiffs, William Roberson and Christina Perez ("Mr. Roberson and

21   Ms. Perez) are a married couple who are currently living at 4 Kuhrt Road, Stafford

22   Springs, Connecticut 06076. They own a home located at 7 Autumn Street,

23   Springfield, Vermont 05156.

24       19.    Plaintiff, Craig Iden ("Mr. Iden") is an individual who resides at 4048

25   Harlington Circle, El Dorado Hills, California 95762.

26       20.    Plaintiff, Rita Jackson ("Ms. Jackson") is an individual who resides

27   at 238 Mill Street, Randolph, Massachusetts 02368.

28       21.    Plaintiff, Terri Kwake ("Ms. Kwake") is an individual who resides at

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    4
Case No. 2:11-cv-04609-AHM (JCx)

1   25951 Highway 36, Cheshire, Oregon 97419.

2     22. Plaintiffs, Denis Ingham and Eleanor Murphy ("Mr. Ingham and Ms.

3   Murphy") are a married couple who reside at 7 Boylston Lane, Lowell,

4   Massachusetts 01852.

5     23. Defendant, BAC Home Loans Servicing, L.P. services residential

6   mortgage loans and is a subsidiary of Bank of America, N.A It is located at 4500

7   Park Granada, Calabasas, California 91302. Effective July 1, 2011, BAC Home

8   Loans Servicing, L.P. merged with and into Bank of America, N.A. Defendant,

9   Bank of America, is a mortgage lender and servicer with headquarters at 101

10  Tryon Street, Charlotte, North Carolina 28255.

11       **III. FACTUAL BACKGROUND**

12    **A. The Foreclosure Crisis**

13    24. Over the last three years, the United States has been in a foreclosure

14  crisis.  In 2009, a congressional oversight panel noted that one in eight U.S.

15  mortgages was already in foreclosure or default, and an additional 250,000

16  foreclosures were beginning every month. *October Oversight Report: An*

17  *Assessment of Foreclosure Mitigation Efforts After Six Months*, Congressional

18  Oversight Panel at 3 (October 9, 2009), *available at*

19  http://cybercemetery.unt.edu/archive/cop/20110401223225/http://cop.senate.gov/r

20  eports/ (last visited May 26, 2011). In April 2010, the congressional oversight

21  panel reported that foreclosures were continuing at a rapid pace.  In total, 2.8

22  million homeowners received a foreclosure notice in 2009. *April Oversight*

23  *Report: Evaluating Progress on TARP Foreclosure Mitigation Programs*,

24  Congressional Oversight Panel at 3 (April 14, 2010), *available at*

25  http://cybercemetery.unt.edu/archive/cop/20110401223225/http://cop.senate.gov/r

26  eports/ (last visited May 26, 2011).

27    25. The numbers continue to rise. For the third quarter of 2010,

28  foreclosure filings-default notices, scheduled auctions and bank repossessions

1  were reported on 930,437 properties in the 3rd quarter. One in every 139 U.S.

2  housing units received a foreclosure filing in this quarter.

3      26.    The foreclosure crisis is not over. Economists predict that interest

4  rate resets on the riskiest of lending products will not reach their zenith until

5  sometime in 2011. *See* Eric Tymoigne, Securitization, Deregulation, Economic

6  Stability, and Financial Crisis, Working Paper No. 573.2 at 9, Figure 30 *available*

7  *at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1458413 (citing a Credit

8  Suisse study showing monthly mortgage rate resets).

9      27.    Increased foreclosures have a detrimental effect not just on the

10  homeowners who lose unique property and face homelessness, but also on the

11  surrounding neighborhoods that suffer decreased property values and

12  municipalities that lose tax revenue.

13      28.    The federal government, the mortgage industry (including BOA), and

14  consumer advocates all agree that providing homeowners who have the ability to

15  pay affordable loan modifications is essential to curb the foreclosure crisis. *See*,

16  ¶3, *supra*.

17      **B.    Bank of America's Loan Modification Programs**

18      29.    Bank of America is the largest residential mortgage lender and

19  mortgage loan servicer in the country, serving "one in two U.S. households." Bank

20  of America, Annual Report (Form 10-K), at 2-3 (2009).

21      30.    Bank of America and BOA invite homeowners who are experiencing

22  financial difficulties to contact it for help. Bank of America Website for Home

23  Loan Assistance, *available at*

24  http://homeloanhelp.bankofamerica.com/en/index.html (last viewed on May 3,

25  2011). Bank of America promises homeowners that it will, "do everything

26  possible to come up with a solution to help you." *Id*. For homeowners that can

27  afford to stay in their homes but are struggling with their monthly mortgage

28  payments, Bank of America provides several home loan assistance programs that

1  were created, "...to help homeowners stay in their homes and make their payments

2  more affordable." *Id*., at http://homeloanhelp.bankofamerica.com/en/loan-

3  assistance-programs.html. Included in these options are several loan modification

4  programs. *Id*.

5        31.    According to Bank of America's 2008 Annual Report, in 2008, it

6  initiated loan modification programs projected to offer modifications for up to

7  630,000 homeowners. Bank of America, Annual Report (Form 10-K), at 23

8  (2008). During 2008, "to help borrowers avoid foreclosure," Bank of America and

9  Countrywide completed over 230,000 loan modifications. *Id*.

10       32.    According to Bank of America's 2009 Annual Report, it completed

11  260,000 permanent loan modifications in 2009. Bank of America, Annual Report

12  (Form 10-K), at 66 (2009). The "most common" types of modifications include

13  rate reductions, (17% of the 260,000 permanent modifications), capitalization of

14  past due amounts, (21% of the 260,000 permanent modifications), or a

15  combination of rate reduction and capitalization of past due amounts, (40% of the

16  260,000 permanent modifications). *Id*. Bank of America also provides rate and

17  payment extensions, principal forbearance or forgiveness, and "other" modified

18  terms. *Id*.

19       33.    According to Bank of America's 2010 Annual Report, it completed

20  285,000 permanent loan modifications in 2010, including approximately 109,000

21  modifications under the Treasury's Home Affordable Modification Program

22  ("HAMP"). Bank of America, Annual Report (Form 10-K), at 63 (2010).

23       34.    Since January 2008, and through 2011, Bank of America and

24  Countrywide have completed over one million loan modifications with customers.

25  During 2011, BOA completed over 225,000 residential loan modifications with a

26  total unpaid principal balance of approximately $49.9 billion, including

27  approximately 104,000 permanent modifications under the government's Making

28  Home Affordable Program. The most common types of modifications include a

**THIRD AMENDED CLASS ACTION COMPLAINT**                                                    7
Case No. 2:11-cv-04609-AHM (JCx)

1  combination of rate reduction and capitalization of past due amounts which
2  represent 60 percent of the volume of modifications completed in 2011, while
3  principal forbearance represented 19 percent, principal reductions and forgiveness
4  represented 6 percent and capitalization of past due amounts represented 8
5  percent. Bank of America, Annual Report (Form 10-K), at 81 (2011).

6       35.    However, as illustrated by the following exemplar stories of the
7  named Plaintiffs, BOA has failed to honor a significant percentage of these
8  hundreds of thousands of permanent loan modification agreements with
9  homeowners, depriving them of their last chance to keep their homes, and
10 exacerbating the housing crisis.

11                   **IV.   FACTUAL ALLEGATIONS**

12     **A.   Plaintiff Maria Campusano**

13      36.    Maria Campusano ("Ms. Campusano") is a single mother of four
14 residing in Lawrence, Massachusetts with her 13-year old son. Her home is a three
15 family residence in which she rents the first floor to her elderly mother, disabled
16 nephew and niece. Ms. Campusano has been working for the Lawrence School
17 District as an assistant administrator for 12 years.

18      37.    On March 26, 2007, Ms. Campusano refinanced the purchase money
19 mortgage loan she obtained from Bank of America Mortgage in 2002 with a loan
20 from Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender (the
21 "Countrywide loan"). The Countrywide loan was an interest only loan, the
22 payments for which would increase after 10 years by $620.00 per month.

23      38.    On information and belief, on or about April 29, 2009, BOA acquired
24 the servicing rights to the Countrywide loan.

25      39.    Despite struggling to support her children and help support her
26 mother, niece and nephew, Ms. Campusano has always been current on her
27 mortgage loan. However, although she prioritizes her mortgage payments, she has
28 other debts including student loans that she struggles to pay each month. Her debt,

1  coupled with the fact that her monthly mortgage payments would increase under

2  the Countrywide loan, prompted Ms. Campusano to reach out to BOA and apply

3  for a loan modification.

4      40.    Ms. Campusano applied and qualified for a permanent loan

5  modification from BOA. The application process took nearly a year and required

6  Ms. Campusano to expend a significant amount of time and resources to ensure

7  she did everything BOA required of her to evaluate her eligibility for a loan

8  modification. BOA determined that Ms. Campusano qualified for a permanent

9  loan modification.

10     41.    Ms. Campusano and BOA entered into a Loan Modification

11  Agreement ("Agreement") on April 17, 2010. A true and correct copy of the

12  Agreement is attached as Exhibit 1.

13     42.    The cover letter BOA sent to Ms. Campusano accompanying the

14  Agreement included a summary of the Agreement's terms. The Agreement cover

15  letter also assures that, "[BOA] is committed to helping our valued customers who

16  may be having difficulty in making their mortgage payments," and that "[BOA] is

17  committed to providing you the help you need to remain in your home." A true

18  and correct copy of the Agreement cover letter is attached as Exhibit 2.

19     43.    The Agreement amended and supplemented the mortgage and

20  promissory note on the Countrywide loan.

21     44.    Under the Agreement, the Countrywide loan is modified as follows:

22          •    The modified principal and interest payment is $1,153.14.

23               With the required escrow payment of $412.86 per month, the

24               total monthly payment is $1,566.00.

25          •    The Effective Date Agreement is July 1, 2010, which was

26               when the first payment was due.

27          •    The Countrywide loan's fixed interest rate of 6.500% is

28               modified to a fixed interest rate of 3.000%.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                        9
Case No. 2:11-cv-04609-AHM (JCx)

1          •       The total Unpaid Principal Balance, which includes delinquent

2                  interest payments accrued from May 1, 2009 to June 1, 2010 in

3                  the amount of $3,876.96, for a total of $306,826.30.

4          •       Of the total $306,826.30 Unpaid Principal Balance, $52,000 is

5                  deferred as a Balloon Payment to be paid in full at the end of

6                  the loan term. No interest will accrue on the Balloon Payment.

7          45.    The modified monthly payment of $1,566.00 was and continues to be

8    affordable for Ms. Campusano.

9          46.    To execute the Agreement, Ms. Campusano was required to sign and

10   notarize the Agreement and send in a check for $1,566.00 by certified check or

11   money order by April 27, 2010.

12         47.    On or about April 19, 2010, Ms. Campusano sent the signed and

13   notarized Agreement to BOA by Federal Express.

14         48.    On April 23, 2010, Ms. Campusano sent BOA two money orders in

15   the amounts of $1,000 and $566.00, for a total payment of $1,566.00. She paid a

16   $1.50 money order fee.

17         49.    Pursuant to the Agreement, Ms. Campusano made the first payment

18   of $1,566.00 to BOA on July 6, 2010. BOA accepted this payment on July 15,

19   2010.

20         50.    The first monthly statement that BOA sent to Ms. Campusano after

21   the Agreement was executed, dated July 29, 2010, did not reflect any of the terms

22   of the modified loan under the Agreement. Among other errors, the July 29, 2010

23   statement provided, **INTEREST-ONLY LOAN MONTHLY STATEMENT**

24   **(During the Interest-Only Period).** The statement included a sections entitled,

25   Your Payment Choices This Month, and listed out three payment choices, (1) an

26   Interest Only Payment in the amount of $1,049.93, (2) a 15-Year Amortized

27   Payment Choice in the amount of $2,559.58, and (3) an Amortized Payment

28   Choice in the amount of $1,568.34. For each of these payment choices, there was

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                              10
Case No. 2:11-cv-04609-AHM (JCx)

1   an Outstanding Late Charge amount listed of $588.09. The statement contained

2   another section entitled Your Home Loan Snapshot as of July 29, 2010 that

3   described Ms. Campusano's loan as a 30 Yr Fixed Jumbo Interest Only loan with a

4   Principal Balance of $254,826.30, a Non-Interest Bearing Principal Balance of

5   $52,000, a Gross Unpaid Principal Balance of $306,825.30, an Escrow Balance of

6   $148.73 and an interest rate of 3.000%. This section also stated that the next

7   payment due date was August 1, 2010 and that Ms. Campusano owed a Past Due

8   Payment of $1,049.93. The statement also listed a Partial Payment Balance of

9   $3,113.85. A true and correct copy of the July 29, 2010 statement is attached as

10  Exhibit 3.

11       51.    Pursuant to the Agreement, Ms. Campusano continued to make

12  monthly payments in the amount of $1,566.00 to BOA on August 6, 2010 and on

13  September 7, 2010. BOA accepted these payments on August 12, 2010 and

14  September 13, 2010, respectively.

15       52.    On September 22, 2010, BOA sent Ms. Campusano a monthly

16  statement stating that the next payment due on October 2, 2010 was $1,566.00.

17  The September 22, 2010 statement also listed a Past Due Payment Amount of

18  $4,690.00 and a Partial Payment Balance of $6,245.85. A true and correct copy of

19  the September 22, 2010 statement is attached as Exhibit 4.

20       53.    On September 22, 2010, BOA also sent Ms. Campusano an escrow

21  analysis showing that her escrow account contained a $398.41 overage.

22       54.    Pursuant to the Agreement, Ms. Campusano continued to make

23  monthly payments in the amount of $1,566.00 on October 4, 2010. BOA accepted

24  this payment on October 7, 2010.

25       55.    On October 4, 2010, BOA sent Ms. Campusano a monthly statement

26  that stated the next payment due on November 1, 2010 was in the amount of

27  $2,001.53. This amount included late charges of $638.16. The statement also

28  indicated that Ms. Campusano's escrow account had a positive $1,782.02 balance.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    11
Case No. 2:11-cv-04609-AHM (JCx)

1    A true and correct copy of the October 4, 2010 statement is attached as Exhibit 5.

2        56.    On October 19, 2010, BOA sent Ms. Campusano a check in the

3    amount of $493.73 to refund an Escrow Overage.

4        57.    Confused and concerned about the inaccurate information BOA was

5    sending to her, Ms. Campusano tried to contact BOA by telephone numerous

6    times during this period. In November, 2010, Ms. Campusano began receiving

7    acceleration notices and other foreclosure-related correspondence from BOA.

8    When she contacted BOA, a BOA representative told her that she was actually

9    ahead in payments, and that she should not make a payment in November, 2010,

10   and that she should make a payment of $1,474.27 in December 2010.

11       58.    BOA has been inaccurately reporting Ms. Campusano's payment

12   history to the credit reporting bureaus since the Agreement.  BOA reported Ms.

13   Campusano's loan as being 90 or more days late in May, 2010, 60 days late in

14   June 2010 and August 2010 and 30 days late in July 2010. During this period Ms.

15   Campusano was making full and timely payments under the Agreement.

16       59.    On December 7, 2010, based on what the BOA representative told

17   her, Ms. Campusano made a monthly payment to BOA in the amount of

18   $1,474.27. BOA accepted this payment on December 7, 2010.

19       60.    Then, during a two-week period following Ms. Campusano's

20   December 7th payment, BOA sent her four Notices of Intention to Foreclose

21   ("Foreclosure Notices").

22       61.    The first Foreclosure Notice was dated December 9, 2010. The

23   December 9, 2010 Foreclosure Notice stated that Ms. Campusano's loan was, "...in

24   serious default because the required payments have not been made," and listed a

25   total amount due and owing of $1,925.63. The Foreclosure Notice also included

26   amounts for Monthly Charges of $7,507.65 and $1,487.90, Late Charges of

27   $172.95, Total Late Charges of $568.98 and a Partial Payment Balance of

28   $7,811.85. The Foreclosure Notice informed Ms. Campusano that in order to cure

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    12
Case No. 2:11-cv-04609-AHM (JCx)

1  the default, she had to pay BOA the full amount of $1,925.63 on or before May 8,

2  2011. A true and correct copy of the December 9, 2010 Foreclosure Notice is

3  attached as Exhibit 6.

4       62.    The second Foreclosure Notice was dated December 15, 2010. The

5  December 15, 2010 Foreclosure Notice stated that Ms. Campusano's loan was,

6  "...in serious default because the required payments have not been made," and

7  listed a total amount due and owing of $8,953.84. The Foreclosure Notice also

8  included amounts for Monthly Charges of $13,925.59 and $1,975.74, Late

9  Charges of $49.23 and $246.15 and a Partial Payment Balance of $7,242.87. The

10  Foreclosure Notice informed Ms. Campusano that in order to cure the default, she

11  had to pay BOA the full amount of $8,953.84 on or before January 14, 2011. A

12  true and correct copy of the December 15, 2010 Foreclosure Notice is attached as

13  Exhibit 7.

14       63.    The third Foreclosure Notice was dated December 16, 2010. The

15  December 16, 2010 Foreclosure Notice stated that Ms. Campusano's loan was,

16  "...in serious default because the required payments have not been made," and

17  listed a total amount due and owing of $8,953.84. The Foreclosure Notice also

18  included amounts for Monthly Charges of $7,957.48 and $1,975.74, Late Charges

19  of $196.92 and a Partial Payment Balance of $1,176.30. The Foreclosure Notice

20  informed Ms. Campusano that in order to cure the default, she had to pay BOA

21  the full amount of $8,953.84 on or before January 15, 2011. A true and correct

22  copy of the December 16, 2010 Foreclosure Notice is attached as Exhibit 8.

23       64.    The fourth Foreclosure Notice was dated December 20, 2010. The

24  December 20, 2010 Foreclosure Notice stated that Ms. Campusano's loan was,

25  "...in serious default because the required payments have not been made," and

26  listed a total amount due and owing of $7,479.57. The Foreclosure Notice also

27  included amounts for Monthly Charges of $5,968.11 and $1,975.74, Late Charges

28  of $147.69, and Uncollected Costs of $611.97. The Foreclosure Notice informed

**THIRD AMENDED CLASS ACTION COMPLAINT**        13
Case No. 2:11-cv-04609-AHM (JCx)

1   Ms. Campusano that in order to cure the default, she had to pay BOA the full

2   $7,479.57 on or before January 19, 2011. A true and correct copy of the December

3   20, 2010 Foreclosure Notice is attached as Exhibit 9.

4        65.    While continuing to try to communicate with BOA about the

5   Foreclosure Notices, Ms. Campusano remained current on her monthly payments

6   under the Agreement. On or about January 5, 2011 Ms. Campusano paid BOA

7   $1,566.00. BOA accepted this payment on January 5, 2011.

8        66.    On January 28, 2011 BOA sent Ms. Campusano a monthly statement

9   that stated the next payment due on February 1, 2011 was in the amount of

10  $1,975.74. It also included a Past Due Payment Amount in the amount of

11  $17,877.07 and a Partial Payment Balance in the amount of $10,283.14. The

12  January 28, 2011 statement described the Loan Type as a 30 Yr. Conventional

13  Jumbo loan with an Interest rate of 6.5000%. The statement also showed a

14  Principal balance adjustment of -$52,000. A true and correct copy of the January

15  28, 2011 statement is attached as Exhibit 10.

16       67.    Ms. Campusano continued to make monthly payments under the

17  Agreement. On or about February 8, 2011, Ms. Campusano paid BOA $1,566.00.

18  BOA accepted this payment on February 8, 2011.

19       68.    On February 25, 2011 BOA sent Ms. Campusano a monthly

20  statement that stated the next payment due on March 1, 2011 was in the amount of

21  $1,975.74. It also included a Past Due Payment Amount in the amount of

22  $19,852.81 and a Partial Payment Balance in the amount of $11,849.14. The

23  February 25, 2011 statement described the Loan Type as a 30 Yr. Conventional

24  Jumbo loan with an Interest rate of 6.5000%. A true and correct copy of the

25  February 25, 2011 statement is attached as Exhibit 11.

26       69.    Ms. Campusano continued to make monthly payments under the

27  Agreement. On or about March 7, 2011, Ms. Campusano paid BOA $1,566.00.

28  BOA accepted this payment on March 7, 2011.

**THIRD AMENDED CLASS ACTION COMPLAINT**                    14
Case No. 2:11-cv-04609-AHM (JCx)

70.     On March 1, 2011, Ms. Campusano, urgently needing answers to the flurry of inaccurate and inconsistent Foreclosure Notices and monthly statements from BOA and living in fear of losing her home, contacted Congresswoman Niki Tsongas for help.

71.     On March 10, 2011, Heather Lynch, a "Customer Advocate" from BOA's Office of the CEO and President, responded to an inquiry sent by the Office of Congresswoman Niki Tsongas on Ms. Campusano's behalf seeking information about Ms. Campusano's April 17, 2010 Loan Modification Agreement. BOA's March 10, 2011 letter reflects utter confusion about the status of Ms. Campusano's loan modification. In the letter, Ms. Lynch claims that "...in January 2011, your investor Federal National Mortgage Association (Fannie Mae) declined [a] modification because the interest rate given did not meet investor guidelines and your loan was sent back to underwriting. This is the reason why your statements are now reflecting your original rate and mortgage payment." The letter made no reference to the Agreement BOA entered into with Ms. Campusano on April 17, 2010. The letter further stated that, "...our records indicate that your home loan is paid through April 1, 2010 with total past due amount of $8,807.25." However, Ms. Campusano had been making payments each month in the amount stated in the Agreement. Moreover, none of the Foreclosure Notices or monthly statements BOA sent to Ms. Campusano indicated an amount of $8,807.25 being due. A true and correct copy of BOA's March 10, 2011 letter is attached as Exhibit 12.

72.     On March 22, 2011 BOA sent Ms. Campusano an escrow analysis showing an Escrow Shortage Due on July 1, 2010 of $4,076.91. A true and correct copy of the March 22, 2011 escrow analysis is attached as Exhibit 13.

73.     On March 25, 2011 BOA sent Ms. Campusano a monthly statement that stated the next payment due on April 1, 2011 was in the amount of $1,574.94. It also included a Past Due Escrow in the amount of $172.19 and an Escrow

1   Balance of -$806.75. The March 25, 2011 statement described the Loan Type as a

2   30 Yr. Conventional Jumbo loan with an Interest rate of 3.000% and a Contractual

3   Remaining Term of 26 years, 1 month. A true and correct copy of the March 25,

4   2011 statement is attached as Exhibit 14.

5        74.    On March 25, 2011 BOA sent Ms. Campusano an escrow analysis

6   showing an Escrow Shortage Due on July 1, 2010 of $4,076.91. A true and correct

7   copy of the March 25, 2011 escrow analysis is attached as Exhibit 15.

8        75.    On April 25, 2011, BOA sent Ms. Campusano another letter,

9   informing her that, "[i]t has come to [BOA's] attention that the mortgage principal

10   balance amount on most of our statements and communications is incorrectly

11   understated." The letter further states, "[f]or example...the mortgage's 'non-interest

12   bearing principal balance' amount was not included in your total mortgage

13   balance, resulting in an understated amount." A true and correct copy of the April

14   25, 2011 letter is attached as Exhibit 16.

15        76.    On or about April 25, 2011, BOA also sent Ms. Campusano a Notice

16   of Assignment, Sale or Transfer of Servicing Rights, notifying her that,

17   "...effective July 1, 2011, the servicing of home loans by our subsidiary - BOA

18   Home Loans Servicing, LP, will transfer to our parent company - Bank of

19   America, N.A." A true and correct copy of the Notice of Transfer of Servicing

20   Rights is attached as Exhibit 17.

21        77.    As of the time of filing this Second Amended Complaint, Ms.

22   Campusano continues to receive escrow statements and refunds that appear to be

23   inconsistent with her Agreement.

24        78.    Ms. Campusano has been damaged by BOA's imposition of past due

25   payments, late fees, other default-related fees and costs and escrow charges on

26   Ms. Campusano's loan account that are not due and owing under the Agreement.

27   These amounts are wrongful and have accrued on Ms. Campusano's account

28   because of BOA's failure to honor the Agreement. BOA is now demanding that

**THIRD AMENDED CLASS ACTION COMPLAINT**     16
Case No. 2:11-cv-04609-AHM (JCx)

1    Ms. Campusano pay these amounts to cure her alleged default and avoid

2    foreclosure.

3         79.    Ms. Campusano has spent dozens of hours attempting to

4    communicate with BOA to correct the errors on her account, to no avail.

5         80.    Ms. Campusano is living in fear and anxiety over the prospect of

6    losing the home she needs to shelter herself and her family. Had BOA honored the

7    Agreement, Ms. Campusano would be on track with her mortgage with affordable

8    monthly payments. Instead, despite the Agreement being in effect for 10 months

9    and being put on notice of its errors, BOA continues to mismanage Ms.

10   Campusano's loan account putting her at risk of foreclosure.

11        81.    On February 8, 2012, Ms. Campusano, along with Plaintiff Rita

12   Jackson also a Massachusetts' resident, on behalf of themselves and similarly

13   situated Massachusetts borrowers, sent BOA a written demand for relief under the

14   Massachusetts' Consumer Protection Statute, M.G.L. §93A.

15        82.    BOA did not make a written tender of settlement in which the relief

16   tendered was reasonable in relation to the injury actually suffered by Ms.

17   Campusano and Ms. Jackson or the class within the meaning of M.G.L. c. 93A,

18   §9(3).

19        **B.    Plaintiffs Nathaniel and Emily Perrone**

20        83.    Nathaniel and Emily Perrone (the "Perrones") are a married couple

21   residing in Issaquah, Washington. Mr. Perrone has been working as an assistant

22   buyer for Costco.com for approximately 11 years. Ms. Perrone has been working

23   as a graphic designer for over 8 years.

24        84.    On or about May 23, 2007, the Perrones refinanced the purchase

25   money mortgage loan they obtained from First Horizon in 2006 with a loan from

26   Pinnacle Mortgage Group, Inc., (the "Pinnacle loan") in order to obtain a lower

27   and fixed interest rate. The Pinnacle loan had a fixed interest rate of 5.875% and a

28   30-year term. On or about July 1, 2007, the servicing rights for the Pinnacle loan

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                              17
Case No. 2:11-cv-04609-AHM (JCx)

1   were transferred to Countrywide Bank, FSB.

2        85.    On information and belief, on or about April 29, 2009 BOA acquired

3   the servicing rights to the Pinnacle Mortgage Group, Inc. loan from Countrywide

4   Home Loans.

5        86.    The Perrones have always been current on their mortgage loan.

6   However, when Ms. Perrone's work hours were cut, they became concerned about

7   the long-term affordability of their loan. This prompted the Perrones to reach out

8   to BOA and apply for a permanent loan modification under the federal

9   government's Home Affordable Modification Program ("HAMP") in or about

10  June, 2009.

11       87.    As part of their HAMP application, BOA sent the Perrone's a Trial

12  Period Plan ("TPP"), requiring them to make three monthly payments of

13  $1,871.99 in March 2010, April 2010 and May 2010. The Perrones made all of the

14  required TPP payments on time and in full.  The Perrones continued to make

15  payments to BOA in the amount of $1,871.99 in June, July, August, September

16  and October, 2010.

17       88.    On October 22, 2010, the Perrones received a HAMP permanent loan

18  modification agreement ("Agreement") from BOA. A true and correct copy of the

19  Agreement is attached as Exhibit 18.

20       89.    The Perrones had just made their November, 2010 payment in the

21  amount of $1,871.00 when they received the Agreement. They called BOA to

22  inform it that they had already made their November payment in the amount

23  required by the TPP. BOA informed them that their first payment under the new

24  Agreement was due on December 1, 2010.

25       90.    The cover letter BOA sent to the Perrones accompanying the

26  Agreement explains:

27                 Under the [HAMP], permanent loan modifications typically go

28                 into effect the first or second month after the customer
               successfully completes the three month Trial Period. We

required additional time to process your permanent modification and, as a result, we are taking the following steps to permanently modify your loan and bring your account current:

•     We will make your permanent modification effective as of the date it would have become effective had we processed your modification in a timely manner. This date is known as the Modification Effective date. The Modification Effective Date for your loan is June 1, 2010.

•     Any payments you made after June 1, 2010 until the time we converted your Trial Period to a permanent modification will be applied as payments under your new modified loan terms.

•     Any shortfalls between the actual payments you made after June 1, 2010, including any missed payments and payments that are due under the modification will be advanced by us, and will be payable by you either at the end of your mortgage term, when you refinance your loan or when you sell your home. This amount will not accrue interest and is referred to in your Modification Agreement as "Other Deferred Amounts." Your "Other Deferred Amounts" total is **$608.90**. (emphasis supplied).

91.    The TPP payments were approximately $121.78 less than the payments required under the Agreement, therefore, the $608.90 "Other Deferred Amounts" represents the difference between the TPP payments and the Agreement's required payments that accrued during the five month period BOA delayed in permanently modifying the Pinnacle loan.

92.    The cover letter also included a summary of the Agreement's terms, and assures that, "...the new terms of your modified mortgage [] will go into effect once you complete and return the enclosed documents," and that, "[y]our monthly statement will reflect your new payment amount once you return your signed and notarized Modification Agreement and your permanent modification is effective." A true and correct copy of the Agreement cover letter is attached as Exhibit 19.

93.    The Perrones signed and returned the Agreement to BOA on or about October 27, 2010.

94.    The Agreement amended and supplemented the mortgage and

1    promissory note on the Pinnacle loan.

2        95.    In addition to the terms relating to the Effective Date of the

3    Agreement described in paragraph 85 above, under the Agreement, the Pinnacle

4    loan is modified as follows:

5              •    The modified principal and interest payment for the first five

6                   years is $1,584.20. With the required escrow payment of

7                   $409.57 per month, the total monthly payment is $1,993.77.

8              •    For year 6, the total monthly payment including escrow is

9                   $2,153.38.

10             •    For years 7-28, the total monthly payment including escrow is

11                  $2,294.41.

12             •    The Effective Date of the Agreement is June 1, 2010, which

13                  was when the first payment was due.

14             •    The Pinnacle loan's fixed interest rate of 5.875% is modified to

15                  an adjustable interest rate of 3.125% for the first five years.

16                  For year 6, the interest rate is 4.125%. For years 7-28, the

17                  interest rate is 5.000%.

18             •    The New Principal Balance, which includes capitalized past

19                  due interest, taxes and insurance of $2,278.32 is $347,086.19.

20       96.    The modified monthly payment of $1,993.77 was and continues to be

21    affordable for the Perrones.

22       97.    The first monthly statement that BOA sent to the Perrones after the

23    Agreement was executed, dated November 19, 2010, did not reflect any of the

24    terms of the modified loan under the Agreement. Among other errors, the July 29,

25    2010 statement provided that the payment due on December 1, 2010 was

26    $2,539.11. The statement also included a Past Due Payment Amount of

27    $22,898.82, a Partial payment balance of $14,975.92 and a Negative Escrow

28    Balance of -$2,345.11. The statement provided a Monthly Payment Breakdown,

1    which shows a principal and interest payment of $2,129.54, an escrow payment of

2    $409.57, and fees due of $60.00 for a total payment of $2,539.11. The loan's

3    interest rate is listed in the statement as 5.875%.  A true and correct copy of the

4    November 19, 2010 statement is attached as Exhibit 20.

5           98.    Pursuant to the Agreement on November 26, 2010, the Perrones

6    made a payment to BOA under the Agreement in the amount of $1,993.77 for

7    December's payment. BOA accepted this payment.

8           99.    On December 31, 2010, BOA sent the Perrones a monthly statement

9    stating that the next payment due on January 1, 2011 was $1,993.77. The

10   December 31, 2010 statement also listed a Past Due Payment Amount of

11   $13,956.39, a Partial Payment Balance of $15,219.48, a Negative Escrow Balance

12   of -$1,826.43, a Principal Balance of $347,086.19 and Fees Due in the amount of

13   $60.00. A true and correct copy of the December 31, 2010 statement is attached as

14   Exhibit 21.

15          100.   Pursuant to the Agreement, the Perrones made a monthly payment of

16   $1,993.77 to BOA on December 31, 2010 for January's payment. BOA accepted

17   this payment.

18          101.   On January 28, 2011, BOA sent the Perrones a monthly statement

19   that stated that the next payment due on February 1, 2011 was in the amount of

20   $1,993.77. The January 28, 2011 statement also listed a Past Due Payment

21   Amount of $15,950.16, a Partial Payment Balance of $17,213.25, a Negative

22   Escrow Balance of -$1,826.43, a Principal Balance of $347,086.19 and Fees Due

23   in the amount of $60.00. A true and correct copy of the January 28, 2011

24   statement is attached as Exhibit 22.

25          102.   Pursuant to the Agreement, the Perrones made a monthly payment in

26   the amount of $1,993.77 on January 28, 2011 for February's payment. BOA

27   accepted this payment.

28          103.   On February 25, 2011, BOA sent the Perrones a monthly statement

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    21
Case No. 2:11-cv-04609-AHM (JCx)

1  that stated that the next payment due on March 1, 2011 was in the amount of

2  $1,993.77. The February 25, 2011 statement also listed a Past Due Payment

3  Amount of $1,993.77 and a Principal Balance of $340,330.60.

4      104.   Pursuant to the Agreement, the Perrones made a monthly payment in

5  the amount of $1,993.77 on March 1, 2011 for March's payment. BOA accepted

6  this payment.

7      105.   On March 30, 2011, BOA sent the Perrones a monthly statement that

8  included a Past Due Notice, stating, "[o]ur records show that we have not received

9  your home loan payment that was due on March 1, 2011." The statement warned:

10          There has been a payment default or other default on your loan

11  that could result in acceleration of all sums due under the note. As a result, BOA Home Loans Servicing, LP will use

12  companies, including its affiliates...to provide services required to protect the note holder's interest and rights in the property

13  and under the note and security instrument, including any remedies thereunder (the "Default Related Services"). BOA

14  Home Loans Servicing, LP will assess fees to your loan account for the Default Related Services, including those

15  provided by its affiliates. A schedule of fees that may be charged to your account for Default Related Services is

16  available at the following web address: http://www.bankofamerica.com/defaultfees.  If you do not

17  have internet access, please contact us at 1.866.653.6183 Mon-Fri, 8am to 9pm Eastern Time to have a fee schedule mailed to

18  you. The fee schedule contains a complete list of the Default Related Services you could be charged, however, it does not

19  include a complete list of all fees or charges that could be assessed on your loan account.

20      106.   The statement also provided that the amount due for the April 1, 2011

21  payment was $2,393.77, a Past Due Payment amount of $1,993.77, a Principal

22  Balance of $339,632.68, a positive Escrow Balance of $1,859.70, and Outstanding

23  Late Charges in the amount of $1,111.54. A true and correct copy of the March

24  30, 2011 statement is attached as Exhibit 23.

25      107.   On March 31, 2011, despite being current on the modified loan under

26  the Agreement, BOA sent the Perrones a notice informing them of various options

27  to help them avoid foreclosure, such as a applying for a loan modification,

28  repayment arrangements, deed-in-lieu and short sale. A true and correct copy of

**THIRD AMENDED CLASS ACTION COMPLAINT**
Case No. 2:11-cv-04609-AHM (JCx)

1   the March 31, 2011 notice is attached as Exhibit 24.

2       108.   Pursuant to the Agreement, the Perrones made a monthly payment in

3   the amount of $1,993.77 on April 4, 2011 for April's payment. BOA accepted this

4   payment.

5       109.   On April 22, 2011, BOA sent the Perrones a notice informing them

6   of various options to help them avoid foreclosure, such as a loan modification,

7   repayment arrangements, deed-in-lieu and short sale. A true and correct copy of

8   the April 22, 2011 notice is attached as Exhibit 25.

9       110.   On April 27, 2011, BOA sent the Perrones a monthly statement that

10   stated that the next payment due on May 1, 2011 was in the amount of $2,493.77.

11   The February 25, 2011 statement also listed a Past Due Payment Amount of

12   $1,993.77, a Negative Escrow Balance of -$348.65, Outstanding Late Charges of

13   $1,190.52 and a Principal Balance of $338,233.68. A true and correct copy of the

14   April 27, 2011 statement is attached as Exhibit 26.

15       111.   Pursuant to the Agreement, the Perrones made a monthly payment in

16   the amount of $1,994.00 on April 27, 2011 for May's payment. BOA accepted this

17   payment.

18       112.   On May 3, 2011, BOA sent the Perrones a letter informing them that,

19   "[d]uring a recent review, we identified that your 'Other Deferred Amount' is less

20   than originally stated in your Modification Agreement." The letter further

21   explained that, "[t]he 'Other Deferred Amount' stated in your Modification

22   Agreement was $608.90. The actual 'Other Deferred Amount' is $0.00." A true

23   and correct copy of the May 3, 2011 letter is attached as Exhibit 27.

24       113.   Confused and concerned about the inaccurate information BOA was

25   sending to them, the Perrones have tried on numerous occasions to contact BOA

26   by telephone numerous times during this period.

27       114.   Despite being current on their monthly mortgage payments under the

28   Agreement, BOA's collection department has telephoned and continues to

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    23
Case No. 2:11-cv-04609-AHM (JCx)

1  telephone the Perrones telling them that they are in default on their loan.

2      115.  The Perrones have been damaged by BOA's imposition of past due

3  payments, late fees, other default-related fees and costs and escrow charges on

4  their loan account that are not due and owing under the Agreement. These

5  amounts are wrongful and have accrued on the Perrones' account because of

6  BOA's failure to honor the Agreement. BOA is now demanding that the Perrones

7  pay these amounts to cure their alleged default and avoid foreclosure.

8      116.  The Perrones have spent dozens of hours attempting to communicate

9  with BOA to correct the errors on their account, to no avail.

10      117.  The Perrones are living in fear and anxiety over the prospect of

11  losing their home. Had BOA honored the Agreement, the Perrones would be on

12  track with their mortgage with affordable monthly payments. Instead, despite the

13  Agreement being in effect for 8 months and being put on notice of its errors, BOA

14  continues to mismanage the Perrones' loan account, putting them at risk of

15  foreclosure.

16      **C.**    **Plaintiff Patsy Vaughn**

17      118.  Patsy Vaughn ("Ms. Vaughn") is an individual residing in

18  Cartersville, Georgia, with her husband, son and daughter in law, and two

19  grandchildren aged 14 and 7. Ms. Vaughn has been working in the quality control

20  department of Graham Packaging Company, Inc. for 14 years.

21      119.  Ms. Vaughn purchased her Cartersville residence in June 2008 with a

22  loan from Taylor Bean & Whitaker (the "TBW loan"). The TBW loan had a

23  6.000% fixed interest rate and a 30-year term. The monthly payments on the TBW

24  loan, including taxes and insurance, were $729.57.

25      120.  In or about August, 2009, BOA acquired the servicing rights to the

26  TBW loan after Taylor Bean & Whitaker's CEO was imprisoned for fraud charges

27  and the company went bankrupt.

28      121.  Beginning on July 12, 2008, Ms. Vaughn was subject to a series of

---

**THIRD AMENDED CLASS ACTION COMPLAINT**      24
Case No. 2:11-cv-04609-AHM (JCx)

1   layoffs by Graham Packaging. She was first laid off for a period of 8 months, then

2   returned back to work full time on March 10, 2009. She was laid off a second time

3   on September 1, 2009, and started full time again in January 20, 2010. Ms.

4   Vaughn continues to work full time for Graham Packaging at present.

5        122.   Despite the financial hardship associated with the multiple layoffs,

6   Ms. Vaughn always made her monthly payments on the TBW loan. However,

7   when the servicing rights to the TBW loan were transferred to BOA, there was a

8   period of confusion when it was unclear to what address Ms. Vaughn was to make

9   her monthly mortgage payments. For the first time, Ms. Vaughn fell behind on her

10  mortgage payments.

11       123.   Ms. Vaughn contacted Bank of America to apply for a loan

12  modification in or about early 2010.

13       124.   Ms. Vaughn applied and qualified for a permanent loan modification

14  from BOA. Ms. Vaughn spent a significant amount of time and resources to

15  ensure Ms. Vaughn did everything BOA required of her to evaluate her eligibility

16  for a loan modification. Despite Ms. Vaughn's efforts during this period, BOA

17  repeatedly lost documents associated with her loan application and gave Ms.

18  Vaughn conflicting information about the status of her application.  Ultimately,

19  BOA determined that Ms. Vaughn qualified for a permanent loan modification.

20       125.   Ms. Vaughn and BOA entered into a Loan Modification Agreement

21  ("Agreement") on April 28, 2010. A true and correct copy of the Agreement is

22  attached as Exhibit 28.

23       126.   The cover letter BOA sent to Ms. Vaughn accompanying the

24  Agreement included a summary of the Agreement's terms. A true and correct copy

25  of the Agreement cover letter is attached as Exhibit 29.

26       127.   The Agreement amended and supplemented the mortgage and

27  promissory note on the TBW loan.

28       128.   Under the Agreement, the TBW loan is modified as follows:

**THIRD AMENDED CLASS ACTION COMPLAINT**                    25
Case No. 2:11-cv-04609-AHM (JCx)

1      •     The modified principal and interest payment is $606.12. With

2          the required escrow payment of $121.73 per month, the total

3          monthly payment is $727.85.

4      •     The first payment of $727.85 was due on June 1, 2010.

5      •     The TBW loan's fixed interest rate of 6.000% is modified to a

6          fixed interest rate of 4.750%. The loan term is 28 years, ending

7          in July 2038.

8      •     The total Unpaid Principal Balance, which includes delinquent

9          interest payments of $6,283.17, totals $112,840.10.

10     129.   The modified monthly payment of $727.85 was and continues to be

11 affordable for Ms. Vaughn.

12     130.   To execute the Agreement, Ms. Vaughn was required to sign and

13 notarize the Agreement and return to BOA with a check for $330.89 by certified

14 check or money order by May 8, 2010.

15     131.   On or about May 3, 2010, Ms. Vaughn sent the signed and notarized

16 Agreement to BOA by Federal Express with the required payment of $330.89 by

17 cashiers check.

18     132.   The first monthly statement that BOA sent to Ms. Vaughn after the

19 Agreement was executed, dated May 28, 2010, did not reflect any of the terms of

20 the modified loan under the Agreement. Among other errors, the May 28, 2010

21 statement stated that Ms. Vaughn's payment due on June 1, 2010 was $768.72,

22 and that there was a Past Due Payment Amount of $9,610.04 and a Partial

23 Payment Balance of $2,121.27. The May 28, 2010 statement also listed a Principal

24 Balance of $106,556.93 and a negative Escrow Balance of -$1,467.31. The May

25 28, 2010 statement includes a section entitled, "Home Loan Details," and lists the

26 interest rate on the loan as 6.000% and the remaining loan term as 29 years, 2

27 months. The statement advises, "[i]f you and BOA Home Loans Servicing, LP

28 have entered into an agreement to address your monthly payments, please make

**THIRD AMENDED CLASS ACTION COMPLAINT**         26
Case No. 2:11-cv-04609-AHM (JCx)

1   payments in accordance with this agreement." A true and correct copy of the May
2   28, 2010 statement is attached as Exhibit 30.

3       133.   Ms. Vaughn telephoned BOA when she received the May 28, 2010
4   statement to ask about the errors. A BOA representative reassured her that she was
5   approved for a permanent loan modification and that she should disregard the
6   monthly statement.

7       134.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of
8   $727.85 to BOA on June 10, 2010. BOA accepted this payment on June 11, 2010.

9       135.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of
10  $727.85 to BOA on July 2, 2010. BOA accepted this payment.

11      136.   On July 29, 2010, BOA sent Ms. Vaughn a monthly statement that
12  stated the payment due on August 1, 2010 was in the amount of $768.72. It also
13  included a Past Due Payment Amount of $11,147.48, a Partial Payment Balance
14  of $2,849.12, a Principal Balance of $106,556.93 and a negative Escrow Balance
15  of -$1,467.31. The July 29, 2010 statement includes a section entitled, "Home
16  Loan Details," and lists the interest rate on the loan as 6.000% and the remaining
17  loan term as 29 years, 2 months. The statement advises, "[i]f you and BOA Home
18  Loans Servicing, LP have entered into an agreement to address your monthly
19  payments, please make payments in accordance with this agreement." A true and
20  correct copy of the July 29, 2010 statement is attached as Exhibit 31.

21      137.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of
22  $727.85 to BOA on August 6, 2010. BOA accepted this payment.

23      138.   On August 30, 2010, BOA sent Ms. Vaughn a monthly statement that
24  stated the payment due on September 1, 2010 was in the amount of $768.72. It
25  also included a Past Due Payment Amount of $11,916.20, a Partial Payment
26  Balance of $2,849.12, a Principal Balance of $106,556.93 and a negative Escrow
27  Balance of -$1,467.31. The August 30, 2010 statement includes a section entitled,
28  "Home Loan Details," and lists the interest rate on the loan as 6.000% and the

**THIRD AMENDED CLASS ACTION COMPLAINT**                    27
Case No. 2:11-cv-04609-AHM (JCx)

1  remaining loan term as 29 years, 2 months. The statement advises, "[i]f you and

2  BOA Home Loans Servicing, LP have entered into an agreement to address your

3  monthly payments, please make payments in accordance with this agreement." A

4  true and correct copy of the August 30, 2010 statement is attached as Exhibit 32.

5       139.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

6  $727.85 to BOA on September 3, 2010. BOA accepted this payment on

7  September 8, 2010.

8       140.   On September 29, 2010, BOA sent Ms. Vaughn a monthly statement

9  that stated the payment due on October 1, 2010 was in the amount of $768.72. It

10 also included a Past Due Payment Amount of $12,684.92, a Partial Payment

11 Balance of $3,576.97, a Principal Balance of $106,556.93 and a negative Escrow

12 Balance of -$1,467.31. The September 29, 2010 statement includes a section

13 entitled, "Home Loan Details," and lists the interest rate on the loan as 6.000%

14 and the remaining loan term as 29 years, 2 months. The statement advises, "[i]f

15 you and BOA Home Loans Servicing, LP have entered into an agreement to

16 address your monthly payments, please make payments in accordance with this

17 agreement." A true and correct copy of the September 29, 2010 statement is

18 attached as Exhibit 33.

19      141.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

20 $727.85 to BOA on October 8, 2010. BOA accepted this payment on October 8,

21 2010.

22      142.   On October 28, 2010, BOA sent Ms. Vaughn a monthly statement

23 that stated the payment due on November 1, 2010 was in the amount of $768.72.

24 It also included a Past Due Payment Amount of $13,453.64, a Partial Payment

25 Balance of $4,304.82, a Principal Balance of $106,556.93 and a negative Escrow

26 Balance of -$2,283.80. The October 28, 2010 statement includes a section entitled,

27 "Home Loan Details," and lists the interest rate on the loan as 6.000% and the

28 remaining loan term as 29 years, 2 months. The statement advises, "[i]f you and

1   BOA Home Loans Servicing, LP have entered into an agreement to address your

2   monthly payments, please make payments in accordance with this agreement." A

3   true and correct copy of the October 28, 2010 statement is attached as Exhibit 34.

4       143.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

5   $727.85 to BOA on November 30, 2010. BOA accepted this payment on

6   November 30, 2010.

7       144.   On November 29, 2010, BOA sent Ms. Vaughn a monthly statement

8   that stated the payment due on December 1, 2010 was in the amount of $768.72. It

9   also included a Past Due Payment Amount of $14,222.36, a Partial Payment

10  Balance of $4,304.82, a Principal Balance of $106,556.93 and a negative Escrow

11  Balance of -$2,283.80. The November 29, 2010 statement includes a section

12  entitled, "Home Loan Details," and lists the interest rate on the loan as 6.000%

13  and the remaining loan term as 29 years, 2 months. The statement advises, "[i]f

14  you and BOA Home Loans Servicing, LP have entered into an agreement to

15  address your monthly payments, please make payments in accordance with this

16  agreement." A true and correct copy of the November 29, 2010 statement is

17  attached as Exhibit 35.

18      145.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

19  $727.85 to BOA on December 16, 2010. BOA accepted this payment on

20  December 16, 2010.

21      146.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

22  $727.85 to BOA on January 31, 2011. BOA accepted this payment on February 4,

23  2011.

24      147.   On February 16, 2011, BOA sent Ms. Vaughn a monthly statement

25  stating that the next payment due on March 1, 2011 was $807.28. The February

26  16, 2011 statement also listed a Past Due Payment Amount of $10,494.38, a

27  Partial Payment Balance of $837.55, a Principal Balance of $105,756.48 and a

28  negative Escrow Balance of -$1,150.98. The February 16, 2011 statement includes

**THIRD AMENDED CLASS ACTION COMPLAINT**                                      29
Case No. 2:11-cv-04609-AHM (JCx)

1   a section entitled, "Home Loan Details," and lists the interest rate on the loan as

2   6.000% and the remaining loan term as 28 years, 7 months. The statement advises,

3   "[i]f you and BOA Home Loans Servicing, LP have entered into an agreement to

4   address your monthly payments, please make payments in accordance with this

5   agreement." A true and correct copy of the February 16, 2011 statement is

6   attached as Exhibit 36.

7        148.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

8   $727.85 to BOA on February 18, 2011. BOA accepted this payment on February

9   22, 2011.

10       149.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

11  $727.85 to BOA on March 9, 2011. BOA accepted this payment on March 11,

12  2011.

13       150.   Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

14  $727.85 to BOA on April 11, 2011. BOA accepted this payment on April 14,

15  2011.

16       151.   BOA sent Ms. Vaughn a Notice dated April 19, 2011, informing her

17  that BOA, "…recently received your payment in the amount of $807.26. This

18  payment was less than the total amount needed to bring your loan up to date.

19  However, we have applied the above referenced payment to your loan in

20  accordance with your loan terms. The total amount due after we applied your

21  payment is $8,403.32." The Notice threatened that, "[i]f the amount due is not

22  received by the specified due date, foreclosure proceedings may begin or

23  continue." A true and correct copy of the April 19, 2011 Notice is attached as

24  Exhibit 37.

25       152.   BOA sent Ms. Vaughn another Notice dated April 21, 2011, which

26  thanked Ms. Vaughn for contacting BOA, then stated, "[w]e understand that it is

27  becoming increasingly difficult for you to make your monthly mortgage payment,

28  and unfortunately we are unable to offer you a workout plan at this time because:

**THIRD AMENDED CLASS ACTION COMPLAINT**                                                30
Case No. 2:11-cv-04609-AHM (JCx)

1    We were unable to contact you." On the same day, BOA called Ms. Vaughn and

2    spoke to her directly, telling her that her loan modification had "expired" because

3    BOA had not received all of the documents it asked for. A true and correct copy

4    of the April 21, 2011 Notice is attached as Exhibit 38.

5         153.    Pursuant to the Agreement, Ms. Vaughn made a monthly payment of

6    $727.85 to BOA on May 2, 2011. BOA accepted this payment on May 5, 2011.

7         154.    On May 18, 2011, BOA sent Ms. Vaughn a monthly statement

8    stating that the next payment due on June 1, 2011 was $731.72. The May 18, 2011

9    statement also listed a Past Due Payment Amount of $9,611.58, a Principal

10   Balance of $105,286.37 and a negative Escrow Balance of -$882.65. The May 18,

11   2011 statement includes a section entitled, "Home Loan Details," and lists the

12   interest rate on the loan as 6.000% and the remaining loan term as 28 years, 3

13   months. The statement warns, "This is to advise you that your account remains

14   seriously delinquent. If we do not hear from you immediately, we will have no

15   alternative but to take appropriate action to protect the interest of the Noteholder

16   in your property." The statement further advises, "[p]lease give this matter your

17   most urgent attention. Please pay the total amount due immediately. BOA Home

18   Loans Servicing, LP will proceed with collection action until your account is

19   brought fully current, and you will be responsible for all cost incurred in this

20   process to the full extent permitted by law." The statement is signed, "Sincerely,

21   Loan Servicing, Loan Counselor." A true and correct copy of the May 18, 2011

22   statement is attached as Exhibit 39.

23        155.    Afraid she would lose her home if she did not cure the alleged

24   delinquency BOA was seeking to collect, Ms. Vaughn made a higher monthly

25   payment of $781.72 to BOA on May 27, 2011 for June's payment, even though

26   this was more than what she owed under the Agreement. BOA accepted this

27   payment on May 31, 2011.

28        156.    On June 29, 2011, BOA sent Ms. Vaughn a monthly statement

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                      31
Case No. 2:11-cv-04609-AHM (JCx)

1    stating that the next payment due on July 1, 2011 was $731.72. The June 29, 2011

2    statement also listed a Past Due Payment Amount of $11,075.02, a Principal

3    Balance of $105,286.37 and a negative Escrow Balance of -$832.65. The June 29,

4    2011 statement includes a section entitled, "Home Loan Details," and lists the

5    interest rate on the loan as 6.000% and the remaining loan term as 28 years, 3

6    months. The statement warns, "This is to advise you that your account remains

7    seriously delinquent. If we do not hear from you immediately, we will have no

8    alternative but to take appropriate action to protect the interest of the Noteholder

9    in your property." The statement further advises, "[p]lease give this matter your

10   most urgent attention. Please pay the total amount due immediately. BOA Home

11   Loans Servicing, LP will proceed with collection action until your account is

12   brought fully current, and you will be responsible for all cost incurred in this

13   process to the full extent permitted by law." The statement is signed, "Sincerely,

14   Loan Servicing, Loan Counselor." A true and correct copy of the June 29, 2011

15   statement is attached as Exhibit 40.

16       157.   Afraid she would lose her home if she did not cure the alleged

17   delinquency BOA was seeking to collect, Ms. Vaughn made another higher

18   monthly payment, this time in the amount of $832.80 to BOA on June 29, 2011

19   for July's payment, even though this was more than what she owed under the

20   Agreement. BOA accepted this payment.

21       158.   BOA sent Ms. Vaughn another Notice dated July 5, 2011, which

22   stated, "[w]e recently received your payment in the amount of $832.80. This

23   payment was less than the total amount needed to bring your loan up to date.

24   However, we have applied the above referenced payment to your loan in

25   accordance with your loan terms. The total amount due after we applied your

26   payment is $8,665.63." The Notice threatened that, "[i]f the amount due is not

27   received by the specified due date, foreclosure proceedings may begin or

28   continue." A true and correct copy of the July 5, 2011 Notice is attached as

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    32
Case No. 2:11-cv-04609-AHM (JCx)

1  Exhibit 41.

2      159.   BOA sent Ms. Vaughn another Notice dated the next day, July 6,

3  2011, which stated, "[w]e recently received your payment in the amount of

4  $757.26. This payment was less than the total amount needed to bring your loan

5  up to date. However, we have applied the above referenced payment to your loan

6  in accordance with your loan terms. The total amount due after we applied your

7  payment is $8,615.63." The Notice threatened that, "[i]f the amount due is not

8  received by the specified due date, foreclosure proceedings may begin or

9  continue." A true and correct copy of the July 6, 2011 Notice is attached as

10  Exhibit 42.

11      160.   On or about July 9, 2011, Ms. Vaughn received a notice from Bank

12  of America Home Loans informing her that, "[e]ffective July 1, 2011, the

13  servicing of home loans by our subsidiary – BOA Home Loans Servicing, LP,

14  transfers to its parent company – Bank of America, N.A." The servicing transfer

15  notice includes a Debt Validation Notice, which states, "[a]s of June 29, 2011, you

16  owe $112,117.12." The servicing transfer notice explains that, "[t]he name of the

17  creditor to whom the debt is owed [is]: GNMA-MSS-TBW 9262 AA." A true and

18  correct copy of the servicing transfer notice is attached as Exhibit 43.

19      161.   On or about the same date that Ms. Vaughn received the first

20  servicing transfer notice, Ms. Vaughn received another servicing transfer notice

21  from Bank of America Home Loans directing her to make her monthly payments

22  payable to "Bank of America, N.A." A true and correct copy of the second

23  servicing transfer notice is attached as Exhibit 44.

24      162.   On July 28, 2011, BOA sent Ms. Vaughn a monthly statement stating

25  that the next payment due on August 1, 2011 was $731.72. The July 28, 2011

26  statement also listed a Past Due Payment Amount of $10,192.22, a Principal

27  Balance of $105,047.78 and a negative Escrow Balance of -$558.99. The July 28,

28  2011 statement includes a section entitled, "Home Loan Details," and lists the

**THIRD AMENDED CLASS ACTION COMPLAINT**       33
Case No. 2:11-cv-04609-AHM (JCx)

1   interest rate on the loan as 6.000% and the remaining loan term as 28 years, 1

2   month. The statement warns, "This is to advise you that your account remains

3   seriously delinquent. If we do not hear from you immediately, we will have no

4   alternative but to take appropriate action to protect the interest of the Noteholder

5   in your property." The statement further advises, "[p]lease give this matter your

6   most urgent attention. Please pay the total amount due immediately. BOA Home

7   Loans Servicing, LP will proceed with collection action until your account is

8   brought fully current, and you will be responsible for all cost incurred in this

9   process to the full extent permitted by law." The statement is signed, "Sincerely,

10  Loan Servicing, Loan Counselor." A true and correct copy of the July 28, 2011

11  statement is attached as Exhibit 45.

12      163.   Pursuant to the Agreement, Ms. Vaughn made another monthly

13  payment of $731.72 to BOA on August 9, 2011. BOA accepted this payment.

14      164.   Confused and concerned about the inaccurate information BOA was

15  sending to her, Ms. Vaughn tried to contact BOA by telephone numerous times

16  during this period. In the last 3 months, between May 2011 and July 2011, Ms.

17  Vaughn has contacted BOA at least 15 times in efforts to resolve this issue. In

18  these telephone calls, BOA representatives have told Ms. Vaughn that as of

19  January 2011, foreclosure proceedings have started on her home.

20      165.   On August 30, 2011, BOA sent Ms. Vaughn a monthly statement

21  stating that the next payment due on September 1, 2011 was $731.72. The August

22  30, 2011 statement also listed a Past Due Payment Amount of $10,923.94, a

23  Principal Balance of $105,047.78 and a negative Escrow Balance of -$558.99.

24  The August 30, 2011 statement includes a section entitled, "Loan Type and

25  Term," and lists the interest rate on the loan as 6.000% and the remaining loan

26  term as 28 years, 1 month. The statement warns, "[t]his is to advise you that your

27  account remains seriously delinquent. If we do not hear from you immediately, we

28  will have no alternative but to take appropriate action to protect the interest of the

1  Noteholder in your property." The statement further advises, "[p]lease give this

2  matter your most urgent attention. Please pay the total amount due immediately.

3  BOA Home Loans Servicing, LP will proceed with collection action until your

4  account is brought fully current, and you will be responsible for all cost incurred

5  in this process to the full extent permitted by law." The statement is signed,

6  "Sincerely, Loan Servicing, Loan Counselor." A true and correct copy of the

7  August 30, 2011 statement is attached as Exhibit 45A.

8      166.   On September 8, 2011, BOA sent Ms. Vaughn a letter stating that,

9  "[t]he monthly payment due 07/01/2010 for your mortgage loan is $807.26." The

10  letter further states that, "[t]here is a total of $731.72 credited to your account,

11  which does not represent a full monthly payment." "Since we have not received

12  the remaining amount of $75.54 required to satisfy the payment due [on]

13  07/01/2010 we are returning these funds." The letter touts, "[a]t Bank of America

14  Home Loans, we take great pride in helping people achieve and maintain the

15  dream of homeownership. It's not just our business, it's our passion." A true and

16  correct copy of the August 30, 2011 statement is attached as Exhibit 45B.

17      167.   Pursuant to the Agreement, Ms. Vaughn made another monthly

18  payment of $731.72 to BOA on September 9, 2011.

19      168.   On September 29, 2011, BOA sent Ms. Vaughn a monthly statement

20  stating that the next payment due on September 1, 2011 was $731.72. The

21  September 29, 2011 statement also listed a Past Due Payment Amount of

22  $11,655.66, a Principal Balance of $105,047.78 and a negative Escrow Balance of

23  -$558.99. The September 29, 2011 statement includes a section entitled, "Loan

24  Type and Term," and lists the interest rate on the loan as 6.000% and the

25  remaining loan term as 28 years, 1 month. The statement warns, "[t]his is to

26  advise you that your account remains seriously delinquent. If we do not hear from

27  you immediately, we will have no alternative but to take appropriate action to

28  protect the interest of the Noteholder in your property." The statement further

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    35
Case No. 2:11-cv-04609-AHM (JCx)

advises, "[p]lease give this matter your most urgent attention. Please pay the total amount due immediately. BOA Home Loans Servicing, LP will proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process to the full extent permitted by law." The statement is signed, "Sincerely, Loan Servicing, Loan Counselor." A true and correct copy of the August 30, 2011 statement is attached as Exhibit 45C.

169.   Pursuant to the Agreement, Ms. Vaughn made another monthly payment of $731.72 to BOA on October 11, 2011.

170.   In the meantime, BOA's collection department, through an autodialer, has been contacting Ms. Vaughn nearly every day, and sometimes multiple times in a single day, to pressure her to pay more than what she owes under the Agreement.

171.   Ms. Vaughn has been damaged by BOA's imposition of past due payments, late fees, other default-related fees and costs, foreclosure-related fees and costs and escrow charges on Ms. Vaughn's loan account that are not due and owing under the Agreement. These amounts are wrongful and have accrued on Ms. Vaughn's account because of BOA's failure to honor the Agreement. BOA is demanding that Ms. Vaughn pay these amounts to cure her alleged default and avoid foreclosure.

172.   Ms. Vaughn has been damaged because she has paid amounts in excess of what was due and owing under the Agreement. She did so because of BOA's aggressive collection efforts and threats of foreclosure.

173.   Ms. Vaughn has spent dozens of hours attempting to communicate with BOA to correct the errors on her account, to no avail.

174.   Ms. Vaughn has been living in fear and anxiety over the prospect of losing her home. Had BOA honored the Agreement, Ms. Vaughn would be on track with her mortgage with affordable monthly payments. Instead, despite the Agreement being in effect for over a year, and being put on notice of its errors,

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                     36
Case No. 2:11-cv-04609-AHM (JCx)

1   BOA continues to mismanage Ms. Vaughn's loan account, putting her at a

2   continued risk of foreclosure.

3        175.   On October 28, 2011, BOA sent Ms. Vaughn a monthly statement

4   stating that the next payment due on November 1, 2011 was $1,131.72. The

5   October 28, 2011 statement also listed a Past Due Payment Amount of

6   $12,387.38, Outstanding Late Charges totaling $407.51, a Principal Balance of

7   $105,047.78 and a negative Escrow Balance of -$558.99. The October 28, 2011

8   statement includes a section entitled, "Loan Type and Term," and lists the interest

9   rate on the loan as 6.000% and the remaining loan term as 28 years, 1 month. The

10  statement warns, "[t]his is to advise you that your account remains seriously

11  delinquent. If we do not hear from you immediately, we will have no alternative

12  but to take appropriate action to protect the interest of the Noteholder in your

13  property." The statement further advises, "[p]lease give this matter your most

14  urgent attention. Please pay the total amount due immediately. BOA Home Loans

15  Servicing, LP will proceed with collection action until your account is brought

16  fully current, and you will be responsible for all cost incurred in this process to the

17  full extent permitted by law." The statement is signed, "Sincerely, Loan Servicing,

18  Loan Counselor." A true and correct copy of the October 28, 2011 statement is

19  attached as Exhibit 45D.

20       176.   On November 10, 2011, BOA sent Ms. Vaughn a letter stating that,

21  "[t]he monthly payment due [on] 07/01/2010 for your mortgage loan is $807.26.

22  There is a total of $731.72 credited to your account, which does not represent a

23  full monthly payment. Since we have not received the remaining amount [of]

24  $75.54 required to satisfy the payment due 07/01/2010 we are returning these

25  funds." The letter touts, "At Bank of America, N.A., we take great pride in

26  helping people achieve and maintain the dream of homeownership. It's not just

27  our business, it's our passion." A true and correct copy of the November 10, 2011

28  letter is attached as Exhibit 45E.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                     37
Case No. 2:11-cv-04609-AHM (JCx)

1    177.   On November 29, 2011, BOA sent Ms. Vaughn a monthly statement

2  stating that the next payment due on December 1, 2011 was $1,106.96. The

3  November 29, 2011 statement also listed a Past Due Payment Amount of

4  $10,697.32, a Principal Balance of $104,685.40, a Partial Payment Balance of

5  $64.26 and a negative Escrow Balance of -$889.99. The November 29, 2011

6  statement includes a section entitled, "Loan Type and Term," and lists the interest

7  rate on the loan as 6.000% and the remaining loan term as 27 years, 10 months.

8  The statement warns, "[t]his is to advise you that your account remains seriously

9  delinquent. If we do not hear from you immediately, we will have no alternative

10  but to take appropriate action to protect the interest of the Noteholder in your

11  property." The statement further advises, "[p]lease give this matter your most

12  urgent attention. Please pay the total amount due immediately. BOA Home Loans

13  Servicing, LP will proceed with collection action until your account is brought

14  fully current, and you will be responsible for all cost incurred in this process to the

15  full extent permitted by law." The statement is signed, "Sincerely, Loan Servicing,

16  Loan Counselor." A true and correct copy of the November 29, 2011 statement is

17  attached as Exhibit 45F.

18    178.   On December 9, 2011, BOA sent Ms. Vaughn a similar letter

19  informing her that it is returning her payments. A true and correct copy of the

20  December 9, 2011 letter is attached as Exhibit 45G.

21    179.   Pursuant to the Agreement, Ms. Vaughn has continued and attempted

22  to make monthly payments of $731.72 to BOA for November, 2011, December,

23  2011, January, 2012, February, 2012 and March, 2012.

24    180.   BOA is rejecting Ms. Vaughn's payments and treating her as if she is

25  in default.

26    **D.    Plaintiffs William Roberson and Christina Perez**

27    181.   William Roberson and Christina Perez ("Mr. Roberson and Ms.

28  Perez") are a married couple who own a home in Springfield, Vermont. Mr.

---
**THIRD AMENDED CLASS ACTION COMPLAINT**                                    38
Case No. 2:11-cv-04609-AHM (JCx)

1   Roberson works as sales manager for various kitchen and cabinet manufacturers.

2   Ms. Perez cares for their 16 and 4 year old boys. In August 2008, Mr. Roberson

3   and Ms. Perez moved to Connecticut on a temporary basis to take advantage of a

4   job opportunity offered to Mr. Roberson. They have been renting their Springfield

5   home during this time, however, when both of their tenants lost their jobs and fell

6   behind on rent payments, Mr. Roberson and Ms. Perez struggled with their

7   mortgage payments.

8       182.   Mr. Roberson and Ms. Perez purchased their Springfield residence in

9   2007 and subsequently refinanced their mortgage loan with Countrywide Home

10  Loans (the "Countrywide loan"). The Countrywide loan was an adjustable rate

11  loan with a 5.750% interest rate that was set to adjust in July 2012 and had a 30

12  year term. The monthly payments on the Countrywide loan, including taxes and

13  insurance, were about $1,328.45.

14      183.   On information and belief, on or about April 29, 2009 BOA acquired

15  the servicing rights to the Countrywide loan.

16      184.   In or about April, 2009, Mr. Roberson and Ms. Perez fell behind on

17  their mortgage payments for the first time since they purchased their home.

18      185.   BOA's "HOPE team" contacted Mr. Roberson soon after the first

19  missed payment, to encourage him to apply for a loan modification.

20      186.   Mr. Roberson and Ms. Perez applied and qualified for a permanent

21  loan modification from BOA. Ultimately, BOA determined that Mr. Roberson and

22  Ms. Perez qualified for a permanent loan modification.

23      187.   Mr. Roberson, Ms. Perez and BOA entered into a Loan Modification

24  Agreement ("Agreement") on December 28, 2009. A true and correct copy of the

25  Agreement is attached as Exhibit 46.

26      188.   The cover letter BOA sent to Mr. Mr. Roberson and Ms. Perez

27  accompanying the Agreement included a summary of the Agreement's terms.  The

28  Agreement cover letter states that BOA is, "…pleased to advise you that your loan

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                        39
Case No. 2:11-cv-04609-AHM (JCx)

1   modification has been approved." A true and correct copy of the Agreement cover

2   letter is attached as Exhibit 47.

3       189.   The Agreement amended and supplemented the mortgage and

4   promissory note on the Countrywide loan.

5       190.   Under the Agreement, the Countrywide loan is modified as follows:

6           •   The modified principal and interest payment is $952.82. With

7               the required escrow payment of $264.39 per month, the total

8               monthly payment is $1,217.21.

9           •   The first payment of $1,217.21 was due on February 1, 2010.

10          •   The Countrywide loan's adjustable interest rate of 5.750% is

11              fixed at 5.750%.

12          •   The total Unpaid Principal Balance, which includes delinquent

13              interest payments accrued in the amount of $2,228.22 and

14              delinquent escrow amounts totaling $362.15, totals

15              $157,787.42.

16      191.   The modified monthly payment of $1,217.21 was and continues to be

17   affordable for Mr. Roberson and Ms. Perez.

18      192.   To execute the Agreement, Mr. Roberson and Ms. Perez were

19   required to sign and notarize the Agreement and return to BOA.

20      193.   On or about January 4, 2010, Mr. Roberson and Ms. Perez sent the

21   signed and notarized Agreement to BOA by Federal Express.

22      194.   A few weeks after executing the Agreement, on January 26, 2010,

23   BOA sent Mr. Roberson and Ms. Perez a Notice of Intent to Accelerate. The

24   Notice warned them that their, "…loan is in serious default because the required

25   payments have not been made." The Notice informed Mr. Roberson and Ms.

26   Perez that they would have to pay $2,756.23 to reinstate the loan. The $2,756.23

27   amount included Total Late Charges of $136.29 and Monthly Charges totaling

28   $2,526.56. The Notice demanded that Mr. Roberson and Ms. Perez pay the

---

**THIRD AMENDED CLASS ACTION COMPLAINT**          40
Case No. 2:11-cv-04609-AHM (JCx)

1    $2,756.23 by February 25, 2010 to cure the default. A true and correct copy of the

2    January 26, 2010 Notice of Intent to Accelerate is attached as Exhibit 48.

3         195.   Confused and concerned about the Notice of Acceleration, Mr.

4    Roberson contacted BOA and could not obtain any information about the

5    Agreement, except that one BOA representative informed him that he could see a

6    copy of the Agreement in BOA's system, but could not open the document.

7         196.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

8    monthly payment of $1,217.21 to BOA on February 5, 2010. BOA accepted this

9    payment.

10        197.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

11   monthly payment of $1,217.21 to BOA on March 5, 2010. BOA accepted this

12   payment.

13        198.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

14   monthly payment of $1,217.21 to BOA on April 9, 2010. BOA accepted this

15   payment.

16        199.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

17   monthly payment of $1,217.21 to BOA on May 9, 2010. BOA accepted this

18   payment.

19        200.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

20   monthly payment of $1,217.21 to BOA on June 7, 2010. BOA accepted this

21   payment.

22        201.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

23   monthly payment of $1,217.21 to BOA on July 9, 2010. BOA accepted this

24   payment.

25        202.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

26   monthly payment of $1,217.21 to BOA on August 8, 2010. BOA accepted this

27   payment.

28        203.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

1  monthly payment of $1,217.21 to BOA on September 8, 2010. BOA accepted this

2  payment.

3      204.  Despite the regular monthly payments Mr. Roberson and Ms. Perez

4  were making under the Agreement, on August 20, 2010, BOA sent them another

5  Notice of Intent to Accelerate. The Notice warned Mr. Roberson and Ms. Perez

6  that their, "…loan is in serious default because the required payments have not

7  been made." The Notice informed Mr. Roberson and Ms. Perez that they would

8  have to pay $3,239.30 to reinstate the loan. The $3,239.30 amount included Total

9  Late Charges of $444.02, Uncollected Costs of $45.00 and Monthly Charges

10 totaling $2,526.90. The Notice demanded that Mr. Roberson and Ms. Perez pay

11 the $3,239.30 by September 19, 2010 to cure the default. A true and correct copy

12 of the August 20, 2010 Notice of Intent to Accelerate is attached as Exhibit 49.

13     205.  Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

14 monthly payment of $1,217.21 to BOA on October 10, 2010. BOA accepted this

15 payment.

16     206.  Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

17 monthly payment of $1,217.21 to BOA on November 5, 2010. BOA accepted this

18 payment.

19     207.  Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

20 monthly payment of $1,217.21 to BOA on December 9, 2010. BOA accepted this

21 payment.

22     208.  On December 31, 2010, BOA sent Mr. Roberson and Ms. Perez a

23 statement containing an "Important Notice," warning Mr. Roberson and Ms. Perez

24 that their "…account remains seriously delinquent," and threatened that, "[i]f we

25 do not hear from you immediately, we will have no alternative but to take

26 appropriate action to protect the interest of the Noteholder in your property." The

27 December 31, 2010 statement stated that the payment due on January 1, 2011 was

28 in the amount of $1,697.02, a Past Due Payment Amount of $3,985.35, a negative

1   escrow balance of -$2,796.94 and a Principal Balance of $153,055.48. The

2   statement also included a section entitled, "Home Loan Details," and listed the

3   Loan Type as a 30 year Conventional ARM with PMI, listed Outstanding Late

4   Charges totaling $149.11 and Fees Due totaling $105.00. A true and correct copy

5   of the December 31, 2010 statement is attached as Exhibit 50.

6       209.   On January 6, 2011, BOA sent Mr. Roberson and Ms. Perez a letter

7   stating that BOA, "[w]e received your correspondence requesting our assistance

8   because of the hardship you are facing. Unfortunately, we must deny your request

9   for the following reason(s): The financial information submitted indicates that you

10  do not have the resources to support a repayment plan or loan modification. If

11  your financial situation improves, please contact BOA Home Loans Servicing,

12  LP, for a re-evaluation of your request. The workout assistance you have

13  requested is not an option." The letter warns, "[i]f your loan is in foreclosure, a

14  scheduled foreclosure sale will be conducted by BOA Home Loans Servicing, LP

15  unless BOA Home Loans Servicing, LP specifically agrees in writing to suspend

16  or cancel the foreclosure sale, or unless your loan is fully reinstated or paid off in

17  accordance with your loan documents and applicable law prior to the scheduled

18  foreclosure sale." "If your loan is delinquent, BOA Home Loans Servicing, LP

19  will continue to report all delinquencies to the credit reporting agencies until your

20  loan is brought fully current." A true and correct copy of the January 6, 2011 letter

21  is attached as Exhibit 51.

22      210.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

23  monthly payment of $1,218.00 to BOA on January 9, 2011. BOA accepted this

24  payment.

25      211.   During this period, Mr. Roberson and Ms. Perez were receiving

26  regular collection calls made through BOA's autodialer. When Mr. Roberson

27  answered these calls and spoke to a BOA representative, he repeatedly explained

28  that he had an Agreement, and quoted the terms of the Agreement over the phone

1    to the representative. He spoke with dozens of different BOA representatives, and

2    was ultimately given the name of an attorney in Rhode Island that purportedly

3    could answer his questions. When Mr. Roberson called the Rhode Island attorney,

4    she told him that BOA had reinstatement papers for him, and would send them to

5    him in the mail. Mr. Roberson had never requested a reinstatement quote.

6    Moreover, because Mr. Roberson and Ms. Perez were current on their payments

7    under the Agreement, the loan was not in default such that it would need to be

8    reinstated.

9        212.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

10   monthly payment of $1,218.00 to BOA on February 12, 2011. BOA returned this

11   payment.

12       213.   On February 21, 2011, BOA sent Mr. Roberson and Ms. Perez a

13   letter informing them that their loan is in foreclosure and providing them with a

14   reinstatement quote totaling $9,438.88. The $9,438.88 comprised 3 Monthly

15   Payments in the amount of $1,328.45, 3 Monthly Payments in the amount of

16   $1,547.91, Uncollected Late Charges of $195.80, Property Inspection Fees of

17   $60.00, Foreclosure Attorney/Trustee Fees of $390.00 and Foreclosure Expenses

18   of $164.00. A true and correct copy of the February 21, 2011 reinstatement letter

19   is attached as Exhibit 52.

20       214.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

21   monthly payment of $1,218.00 to BOA on March 4, 2011. BOA returned this

22   payment.

23       215.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

24   monthly payment of $1,218.00 to BOA on April 4, 2011. BOA returned this

25   payment.

26       216.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

27   monthly payment of $1,218.00 to BOA on May 8, 2011. BOA returned this

28   payment.

---

1    217.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

2  monthly payment of $1,218.00 to BOA on June 9, 2011. BOA returned this

3  payment.

4    218.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

5  monthly payment of $1,300.00 to BOA on July 18, 2011. BOA returned this

6  payment.

7    219.   On July 22, 2011, BOA sent Mr. Roberson and Ms. Perez a letter

8  notifying them that it was returning their July 2011 $1,300.00 payment because

9  their loan, "…is now the subject of foreclosure proceedings…" and because,

10  "[t]he funds remitted representing reinstatement of your loan were not sent via

11  'Certified Funds.'"

12    220.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

13  monthly payment of $1,218.00 to BOA on August 3, 2011. BOA returned the

14  payment on August 10, 2011, claiming that the amount did not reflect the total

15  amount due to cure the default.

16    221.   Pursuant to the Agreement, Mr. Roberson and Ms. Perez made a

17  monthly payment of $1,218.00 to BOA on September 2, 2011. BOA returned the

18  payment on September 9, 2011, informing them that, "[w]e are returning these

19  funds as this loan is now the subject of foreclosure proceedings and the amount

20  remitted cannot be accepted [because]…[t]he funds remitted representing

21  reinstatement of your loan were not sent via 'Certified Funds.'" A true and correct

22  copy of the September 9, 2011 letter is attached as Exhibit 52A.

23    222.   BOA has been inaccurately reporting Mr. Roberson's and Ms.

24  Perez's payment history to the credit reporting bureaus since the Agreement. As

25  of February 2, 2011, after more than a year after the Agreement has been in effect,

26  with Mr. Roberson and Ms. Perez making regular and full payments under the

27  Agreement, BOA is reporting Mr. Roberson's and Ms. Perez's account as being

28  Past Due for the amount of $7,081.00, the Pay Status as "120 Days Past Due" and

**THIRD AMENDED CLASS ACTION COMPLAINT**                                   45
Case No. 2:11-cv-04609-AHM (JCx)

1   the Terms of the account as "$1,328 for 360 months." The credit report also states

2   that the "Estimated date that this item will be removed," will be August, 2016.

3          223.   Mr. Roberson and Ms. Perez have been damaged by BOA's

4   imposition of past due payments, late fees, other default-related fees and costs,

5   foreclosure-related fees and costs and escrow charges on Mr. Roberson's and Ms.

6   Perez's loan account that are not due and owing under the Agreement. These

7   amounts are wrongful and have accrued on Mr. Roberson's and Ms. Perez's

8   account because of BOA's failure to honor the Agreement. BOA is demanding

9   that Mr. Roberson and Ms. Perez pay these amounts to cure their alleged default

10  and avoid foreclosure.

11         224.   Mr. Roberson and Ms. Perez have spent dozens of hours attempting

12  to communicate with BOA to correct the errors on their account and to avoid

13  foreclosure, to no avail.

14         225.   Mr. Roberson and Ms. Perez have been living in fear and anxiety

15  over the prospect of losing their home. Had BOA honored the Agreement, Mr.

16  Roberson and Ms. Perez would be on track with their mortgage with affordable

17  monthly payments. Instead, despite the Agreement being in effect for 20 months,

18  and being put on notice of its errors, BOA continues to mismanage Mr.

19  Roberson's and Ms. Perez's loan account putting them at a continued risk of

20  foreclosure.

21         226.   Mr. Roberson and Ms. Perez have continued and attempted to make

22  payments under the Agreement in October 2011, November 2011, December

23  2011, January 2012 and BOA continued to reject their payments.

24         227.   In February and March 2012, BOA accepted Mr. Roberson's and Ms.

25  Perez's payments in the amount of $1,218.00 each under the Agreement.

26         228.   Despite accepting these payments, BOA began foreclosure

27  proceedings and on March 8, 2012, filed a Motion for Judgment for Foreclosure

28  by Sale in Vermont Superior Court to foreclose on Mr. Roberson's and Ms.

1  Perez's home. The court filings included an Affidavit of Amounts Owing that lists

2  a Principal Balance of $153,055.48, Accrued Interest of $11,458.97, Late Charges

3  totaling $195.80 and Property Inspection/Preservation Fees totaling $165.00. A

4  true and correct copy of the Affidavit of Amounts Owing is attached as Exhibit

5  52B.

6        229.   The Late Charges and Property Inspection Fees accrued during the

7  time period that BOA was accepting Mr. Roberson's and Ms. Perez's payments

8  under the Agreement. The Property Inspection Fees were placed on Mr.

9  Roberson's and Ms. Perez's account every month for nearly a year and showed

10  that the property was occupied. *See*, Exhibit 52B.

11        230.   The court filings also included an Affidavit of Attorney's Fees and

12  Costs that lists $1,300 in Legal Fees, $237.00 for a Title Exam and Updates, a

13  $50.00 Recording Fee for the Complaint, a $70.00 Sheriff's Service Fee, and a

14  $262.50 Court Filing Fee, for a total of $619.50 in costs charged to Mr. Roberson

15  and Ms. Perez. A true and correct copy of the Affidavit of Attorney's Fees and

16  Costs is attached as Exhibit 52C.

17        231.  On Plaintiffs' counsels' request, BOA stayed the foreclosure

18  proceedings.

19        232.   Mr. Roberson and Ms. Perez attempted to make their April, 2012

20  payment under the Agreement. However, their payment was returned with a

21  notation that it was "undeliverable," to BOA's P.O. Box. Mr. Roberson and Ms.

22  Perez contacted the Dallas post office, which informed them that BOA had closed

23  that P.O. Box and provided them with a different P.O. Box address to which to

24  send their BOA payments. Mr. Roberson and Ms. Perez did not receive notice

25  from BOA of the change in billing address.

26     **E.**    __Plaintiff Craig Iden__

27        233.   Craig Iden ("Mr. Iden") is an individual residing in El Dorado Hills

28  California with his wife and two daughters. Mr. Iden was a government employee

---

**THIRD AMENDED CLASS ACTION COMPLAINT**          47
Case No. 2:11-cv-04609-AHM (JCx)

1   for the City of Folsom until he lost his job in November of 2008. He also owns a

2   small private business as a real estate inspector.

3       234.   Mr. Iden purchased his El Dorado Hills residence in July 2003 with a

4   loan from Countrywide Home Loans (the "Countrywide loan"). The Countrywide

5   loan was a 5.5% fixed conventional 30 year mortgage. The monthly payments on

6   the Countrywide loan, including taxes and insurance, were about $2,400.00.

7       235.   At some point after the Countrywide loan was originated, Bank of

8   America acquired the servicing rights to the Countrywide loan. On information

9   and belief, on or about April 29, 2009 BOA acquired the servicing rights to the

10   Countrywide loan from Bank of America.

11       236.   Despite the financial hardship associated with his job loss, Mr. Iden

12   had always been current on his mortgage loan. Immediately after he lost his

13   government job, Mr. Iden contacted Bank of America to apply for a loan

14   modification. A Bank of America representative advised Mr. Iden that he needed

15   to miss a couple of mortgage payments in order to qualify for a loan modification.

16   For the first time since Mr. Iden obtained the Countrywide loan in 2003, he

17   defaulted on his loan.

18       237.   Mr. Iden applied and qualified for a permanent loan modification

19   from BOA. The application process took approximately a year and a half, with the

20   assistance of a third-party loan modification company. Mr. Iden spent a significant

21   amount of time and resources to ensure he did everything BOA required of him to

22   evaluate his eligibility for a loan modification. Despite Mr. Iden's efforts during

23   this period, BOA repeatedly lost documents associated with Mr. Iden's loan

24   application and gave Mr. Iden and the loan modification company conflicting

25   information about the status of his application.  Ultimately, BOA determined that

26   Mr. Iden qualified for a permanent loan modification.

27       238.   Mr. Iden and BOA entered into a Loan Modification Agreement

28   ("Agreement") on July 28, 2010. A true and correct copy of the Agreement is

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                    48
Case No. 2:11-cv-04609-AHM (JCx)

1   attached as Exhibit 53.

2         239.   The cover letter BOA sent to Mr. Iden accompanying the Agreement

3   included a summary of the Agreement's terms. The Agreement cover letter also

4   assures that, "[i]f a foreclosure proceeding or foreclosure sale of your home is

5   currently pending and on hold, that hold will continue and remain in effect.

6   However, if we do not hear back from you by August 5, 2010, the hold on

7   foreclosure will be released and those proceedings will resume...". A true and

8   correct copy of the Agreement cover letter is attached as Exhibit 54.

9         240.   The Agreement amended and supplemented the mortgage and

10   promissory note on the Countrywide loan.

11         241.   Under the Agreement, the Countrywide loan is modified as follows:

12            •     The modified principal and interest payment is $1,140.73.

13                  With the required escrow payment of $507.99 per month, the

14                  total monthly payment is $1,648.72.

15            •     The Effective Date of the New Interest Rate is September 1,

16                  2010.

17            •     The first payment of $1,648.72 was due on October 1, 2010.

18            •     The Countrywide loan's fixed interest rate of 5.500% is

19                  modified to an adjustable interest rate of 2.000%. After 5

20                  years, the interest rate will increase to 3.000% for one year,

21                  then to 4.000% for one year, then to 4.500% for the remainder

22                  of the loan term.

23            •     The total Unpaid Principal Balance, which includes delinquent

24                  interest payments accrued from June 1, 2009 to September 1,

25                  2010 in the amount of $20,437.93 and delinquent escrow

26                  amounts totaling $2,649.91, totals $323,948.58.

27         242.   The modified monthly payment of $1,648.72 was and continues to be

28   affordable for Mr. Iden.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    49
Case No. 2:11-cv-04609-AHM (JCx)

1    243.   To execute the Agreement, Mr. Iden was required to sign and

2    notarize the Agreement and return to BOA with a check for $1,648.72 by certified

3    check or money order by August 5, 2010.

4    244.   On or about August 3, 2010, Mr. Iden sent the signed and notarized

5    Agreement to BOA by Federal Express with the required payment of $1,648.72.

6    BOA received Mr. Iden's executed Agreement on August 4, 2010.

7    245.   The next month, on September 28, 2010, BOA sent Mr. Iden a Notice

8    of Intent to Accelerate. The Notice warned Mr. Iden that his "…loan is in serious

9    default because the required payments have not been made." The Notice informed

10   Mr. Iden that he would have to pay $33,609.27 to reinstate the loan. The

11   $33,609.27 amount included late charges totaling $846.27 for three months of

12   purportedly late payments and $631.04 in "Uncollected Costs." The Notice

13   demanded that Mr. Iden pay the $33,609.27 by October 28, 2010 to cure the

14   default. A true and correct copy of the September 28, 2010 Notice of Intent to

15   Accelerate is attached as Exhibit 55.

16   246.   The first monthly statement that BOA sent to Mr. Iden after the

17   Agreement was executed, dated September 29, 2010, did not reflect any of the

18   terms of the modified loan under the Agreement. Among other errors, the

19   September 29, 2010 statement stated that Mr. Iden's payment due on October 1,

20   2010 was $2,730.16, and that there was a Past Due Payment Amount of

21   $35,186.64 and a Partial Payment Balance of $3,055.04. The September 29, 2010

22   statement also listed a Principal Balance of $300,860.74 and a negative Escrow

23   Balance of -$3,424.83. A true and correct copy of the September 29, 2010

24   statement is attached as Exhibit 56.

25   247.   Pursuant to the Agreement, Mr. Iden made a monthly payment of

26   $1,648.72 to BOA on October 15, 2010. BOA accepted this payment.

27   248.   Three days after receiving the September 28, 2010 Notice of Intent to

28   Accelerate, on October 1, 2010, BOA sent Mr. Iden a second Notice of Intent to

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                              50
Case No. 2:11-cv-04609-AHM (JCx)

1   Accelerate. The Notice informed Mr. Iden that he would have to pay $35,939.43

2   to reinstate the loan. The $35,939.43 amount included late charges totaling

3   $846.27 for three months of purportedly late payments and $631.04 in

4   "Uncollected Costs." The Notice demanded that Mr. Iden pay the $35,939.43 by

5   October 31, 2010 to cure the default. A true and correct copy of the October 1,

6   2010 Notice of Intent to Accelerate is attached as Exhibit 57.

7           249.   On November 18, 2010, BOA sent Mr. Iden a third Notice of Intent

8   to Accelerate. The Notice informed Mr. Iden that he would have to pay

9   $35,175.21 to reinstate the loan. The $35,175.21 amount included late charges

10  totaling $1,034.33 for three months of purportedly late payments and $646.40 in

11  "Uncollected Costs." The Notice demanded that Mr. Iden pay the pay $35,175.21

12  by December 18, 2010 to cure the default. A true and correct copy of the

13  November 18, 2010 Notice of Intent to Accelerate is attached as Exhibit 58.

14          250.   Pursuant to the Agreement, Mr. Iden made a monthly payment of

15  $1,648.72 to BOA on November 16, 2010. BOA accepted this payment.

16          251.   On November 29, 2010, BOA sent Mr. Iden a monthly statement

17  stating that the next payment due on December 1, 2010 was $2,730.16. The

18  November 29, 2010 statement also listed a Past Due Payment Amount of

19  $35,128.08, a Partial Payment Balance of $1,633.60, a Principal Balance of

20  $299,855.30 and a negative Escrow Balance of -$4,538.53. A true and correct

21  copy of the November 29, 2010 statement is attached as Exhibit 59.

22          252.   Pursuant to the Agreement, Mr. Iden made a monthly payment of

23  $1,648.72 to BOA on December 31, 2010. BOA accepted this payment.

24          253.   On December 31, 2010, BOA sent Mr. Iden a monthly statement that

25  warned, "[t]his is to advise you that your account remains seriously delinquent. If

26  we do not hear from you immediately, we will have no alternative but to take

27  appropriate action to protect the interest of the Noteholder in your

28  property…Please pay the total amount due immediately. BOA Home Loans

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                  51
Case No. 2:11-cv-04609-AHM (JCx)

1   Servicing, LP will proceed with collection action until your account is brought

2   fully current, and you will be responsible for all cost incurred in this process to the

3   full extent permitted by law." The statement stated that the next payment due on

4   January 1, 2011 was in the amount of $2,730.16. The statement also listed a Past

5   Due Payment Amount of $35,098.80, a Partial Payment Balance of $2,571.60, a

6   Principal Balance of $299,349.12 and a negative Escrow Balance of -$4,059.61. A

7   true and correct copy of the December 31, 2010 statement is attached as Exhibit

8   60.

9        254.   Also on December 31, 2010, BOA sent Mr. Iden a fourth Notice of

10   Intent to Accelerate. The Notice informed Mr. Iden that he would have to pay

11   $35,950.68 to reinstate the loan. The $35,950.68 amount included late charges

12   totaling $1,128.36 for three months of purportedly late payments and $646.40 in

13   "Uncollected Costs." The Notice demanded that Mr. Iden pay the pay $35,950.68

14   by January 30, 2011 to cure the default. A true and correct copy of the December

15   31, 2010 Notice of Intent to Accelerate is attached as Exhibit 61.

16        255.   Pursuant to the Agreement, Mr. Iden made a monthly payment of

17   $1,648.72 to BOA on January 25, 2011. BOA accepted this payment.

18        256.   On January 20, 2011, BOA sent Mr. Iden a monthly statement that

19   contained the same delinquency warning as the December 31, 2010 statement.

20   The January 20, 2011 statement listed the payment due for February 1, 2011 as

21   $2,759.44, a Past Due Payment Amount of $37,751.04, a Partial Payment Balance

22   of $922.88, a Principal Balance of $299,349.12 and a negative Escrow Balance of

23   -$4,059.61.

24        257.   Mr. Iden made a monthly payment of $1,648.72 to BOA on March 1,

25   2011 for February's payment. BOA accepted this payment.

26        258.   Confused and concerned about the inaccurate information BOA was

27   sending to him, Mr. Iden tried to contact BOA by telephone numerous times

28   during this period. The loan modification company Mr. Iden has been working

1   with has contacted BOA many times on Mr. Iden's behalf to obtain information

2   about the Agreement.

3       259.   Mr. Iden continued to make monthly payments under the Agreement.

4   On or about March 30, 2011, Mr. Iden paid BOA $1,648.72. BOA accepted this

5   payment.

6       260.   On May 5, 2011, BOA sent Mr. Iden a Notice of Trustee's Sale

7   informing him that his home was scheduled for sale at public auction on May 26,

8   2011 at 2:30 p.m. The total principal balance of the loan listed in the Notice of

9   Sale was $330,845.71. A true and correct copy of the Notice of Trustee's Sale is

10  attached as Exhibit 62.

11      261.   Mr. Iden, on his own and through the loan modification company that

12  was assisting him, contacted BOA numerous times regarding the foreclosure sale

13  in an attempt to get it postponed while trying to work with BOA to get it to

14  comply with the Agreement. BOA strung Mr. Iden along, telling him that BOA

15  would postpone the sale but never did.

16      262.   On May 26, 2011, hours before the scheduled foreclosure sale

17  auction, Mr. Iden was forced to file an emergency Chapter 7 bankruptcy petition

18  *pro se* in the Eastern District of California Bankruptcy Court, Case No. 11-33189

19  to stop the foreclosure sale.

20      263.   Mr. Iden has been damaged by BOA's imposition of past due

21  payments, late fees, other default-related fees and costs, foreclosure-related fees

22  and costs and escrow charges on Mr. Iden's loan account that are not due and

23  owing under the Agreement. These amounts are wrongful and have accrued on

24  Mr. Iden's account because of BOA's failure to honor the Agreement. BOA is

25  demanding that Mr. Iden pay these amounts to cure his alleged default and avoid

26  foreclosure.

27      264.   Mr. Iden has spent dozens of hours attempting to communicate with

28  BOA to correct the errors on his account and to avoid foreclosure, to no avail.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                        53
Case No. 2:11-cv-04609-AHM (JCx)

1    265.   Mr. Iden has been living in fear and anxiety over the prospect of

2    losing his home. Had BOA honored the Agreement, Mr. Iden would be on track

3    with his mortgage with affordable monthly payments. Instead, despite the

4    Agreement being in effect for a year, and being put on notice of its errors, BOA

5    continues to mismanage Mr. Iden's loan account putting him at a continued risk of

6    foreclosure.

7    266.   Mr. Iden has been damaged by BOA's conduct because he was

8    forced to file bankruptcy to avoid a foreclosure sale that BOA wrongly scheduled

9    as a result of its breaching the Agreement. Mr. Iden has incurred out-of-pocket

10   costs for the bankruptcy and his credit has been irreparably damaged.

11   **F.    Plaintiff Rita Jackson**

12   267.   Rita Jackson ("Ms. Jackson") is an individual residing in Randolph,

13   Massachusetts. She has been working as a customer service representative at

14   NStar for 35 years.

15   268.   Ms. Jackson purchased her Randolph residence in August 2005 with

16   a predatory loan from Countrywide Home Loans (the "Countrywide loan"). The

17   Countrywide loan was an "80/20" split loan. The larger 80% loan was an interest

18   only loan with an adjustable interest rate beginning at 5.750%. The initial monthly

19   payments on the larger loan, not including taxes and insurance, were $1,261.17.

20   269.   On information and belief, on or about April 29, 2009 BOA acquired

21   the servicing rights to the Countrywide loan.

22   270.   In 2009, Ms. Jackson began to struggle financially and went to a

23   housing counseling agency to help her explore her options to avoid foreclosure.

24   271.   Ms. Jackson applied and qualified for a permanent loan modification

25   from BOA with the assistance of the housing counseling agency. The application

26   process took several months, during which time the housing counseling agency,

27   on Ms. Jackson's behalf, contacted BOA numerous times only to be told that Ms.

28   Jackson's loan modification application was "still under review." Ms. Jackson, on

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    54
Case No. 2:11-cv-04609-AHM (JCx)

1   her own and through the housing counseling agency, spent a significant amount of

2   time and resources to ensure she did everything BOA required of her to evaluate

3   her eligibility for a loan modification. Ultimately, BOA determined that Ms.

4   Jackson qualified for a permanent loan modification.

5       272.   Ms. Jackson and BOA entered into a Loan Modification Agreement

6   on the 80% Countrywide loan ("Agreement") on November 23, 2009. A true and

7   correct copy of the Agreement is attached as Exhibit 63.

8       273.   The cover letter BOA sent to Ms. Jackson accompanying the

9   Agreement included a summary of the Agreement's terms. The Agreement cover

10  letter touts, "BOA Home Loans Servicing, LP is committed to helping our valued

11  customers who may be having difficulty in making their mortgage payments." A

12  true and correct copy of the Agreement cover letter is attached as Exhibit 64.

13      274.   The Agreement amended and supplemented the mortgage and

14  promissory note on the 80% Countrywide loan.

15      275.   Under the Agreement, the 80% Countrywide loan is modified as

16  follows:

17          •   The modified principal and interest payment is $873.54. With

18              the required escrow payment of $320.94 per month, the total

19              monthly payment is $1,194.48.

20          •   The Effective Date of the New Interest Rate is January 1,

21              2010.

22          •   The first payment of $1,194.48 was due on February 1, 2010.

23          •   The adjustable interest rate of 5.750% is modified to an

24              adjustable interest rate of 2.000%. After 5 years, the interest

25              rate will increase to 3.000% for one year, then to 4.000% for

26              one year, then to 5.000% for the remainder of the loan term.

27  / / /

28  / / /

1      •    The total Unpaid Principal Balance, which includes delinquent

2            interest payments in the amount of $6,220.40, totals

3            $267,574.10.

4    276.   The modified monthly payment of $1,194.48 was and continues to be

5  affordable for Ms. Jackson.

6    277.   To execute the Agreement, Ms. Jackson was required to sign and

7  notarize the Agreement and return to BOA with a check for $1,194.48 by certified

8  check or money order by December 14, 2009.

9    278.   On or about December 2, 2009, Ms. Jackson sent the signed and

10  notarized Agreement to BOA by Federal Express with the required payment of

11  $1,194.48.

12    279.   Less than a week after Ms. Jackson returned the executed Agreement

13  and required payments, she received a letter from BOA dated December 7, 2009

14  informing her that her, "…Loan Modification Trial Period Plan is Here!" and

15  instructing her to start making trial period mortgage payments in the amount of

16  $912.80. Under the Federal Government's Home Affordable Modification

17  Program, a Trial Period Plan is a step in the application process for a permanent

18  loan modification. A true and correct copy of the December 7, 2009 letter is

19  attached as Exhibit 65.

20    280.   The first monthly statement that BOA sent to Ms. Jackson after the

21  Agreement was effective, dated January 29, 2010, did not reflect all of the terms

22  of the modified loan under the Agreement. Among other errors, the January 29,

23  2010 statement stated that Ms. Jackson's payment due on February 1, 2010 was

24  $1,206.30, and that there was a Partial Payment Balance of $2,388.96. The

25  January 29, 2010 statement also listed a negative Escrow Balance of -$1,007.82.

26  The statement included a notice stating that Ms. Jackson was, "…currently

27  participating in a Home Affordable Modification Trial Period Plan. During this

28  Trial Period, you may make your monthly payments at the Trial Period monthly

1   payment amount instead of the amount shown on this statement." It further states,

2   "[y]ou will continue to receive monthly statements during your Trial Period Plan

3   that will show the payment amount based on your original home loan agreement

4   as your original loan remains in effect and unchanged during the trial period. You

5   will be notified once we have determined your eligibility for a permanent loan

6   modification." A true and correct copy of the January 29, 2010 statement is

7   attached as Exhibit 66.

8          281.   BOA sent Ms. Jackson another statement dated January 29, 2010.

9   This statement indicates that it is for an "Interest-only" loan, and sets forth an

10  "Interest Only Payment" of $778.72." A true and correct copy of the January 29,

11  2010 "Interest Only" statement is attached as Exhibit 67.

12         282.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

13  $1,195.00 to BOA on January 24, 2010 for February's payment. BOA accepted

14  this payment.

15         283.   On February 25, 2010, BOA sent Ms. Jackson a monthly statement

16  stating that the next payment due on March 1, 2010 was $1,576.84. The February

17  25, 2010 statement also listed a Past Due Payment Amount of $7,912.60, a Partial

18  Payment Balance of $1,978.72, a Principal Balance of $259,633.10 and a negative

19  Escrow Balance of -$646.66. The February 25, 2010 statement also instructs Ms.

20  Jackson to make a Trial Period monthly payment in the amount of $912.79 instead

21  of the amount shown on the statement. A true and correct copy of the February 25,

22  2010 statement is attached as Exhibit 68.

23         284.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

24  $1,195.84 to BOA on February 22, 2010 for March's payment. BOA accepted this

25  payment.

26         285.   On March 30, 2010, BOA sent Ms. Jackson an "Interest Only" loan

27  monthly statement that sets forth an "Interest Only Payment" in the amount of

28  $1,576.84 due on April 1, 2010. The March 30, 2010 statement includes a Past

1  Due Payment Amount of $7,884.20, a Partial Payment Balance of $1,569.32, a

2  Principal Balance of $259,633.10, a negative Escrow Balance of -$285.50 and

3  Outstanding Late Charges of $111.96. The March 30, 2010 statement lists the

4  interest rate on the loan as 5.750%. A true and correct copy of the March 30, 2010

5  statement is attached as Exhibit 69.

6     286.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

7  $1,195.00 to BOA on March 21, 2010 for April's payment. BOA accepted this

8  payment.

9     287.   On April 29, 2010, BOA sent Ms. Jackson an "Interest Only" loan

10  monthly statement that sets forth an "Interest Only Payment" in the amount of

11  $1,576.84 due on May 1, 2010. The April 29, 2010 statement includes a Past Due

12  Payment Amount of $6,307.36, a Partial Payment Balance of $777.24, a Principal

13  Balance of $259,633.10, a negative Escrow Balance of -$463.70 and Outstanding

14  Late Charges of $120.88. The April 29, 2010 statement lists the interest rate on

15  the loan as 5.750%. A true and correct copy of the April 29, 2010 statement is

16  attached as Exhibit 70.

17     288.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

18  $1,195.00 to BOA on May 24, 2010. BOA accepted this payment.

19     289.   On May 28, 2010, BOA sent Ms. Jackson an "Interest Only" loan

20  monthly statement that sets forth an "Interest Only Payment" in the amount of

21  $1,576.84 due on June 1, 2010. The May 28, 2010 statement includes a Past Due

22  Payment Amount of $6,307.36, a Partial Payment Balance of $777.24, a Principal

23  Balance of $259,633.10, a negative Escrow Balance of -$463.70 and Outstanding

24  Late Charges of $158.20. The May 28, 2010 statement lists the interest rate on the

25  loan as 5.750%. A true and correct copy of the May 28, 2010 statement is attached

26  as Exhibit 71.

27     290.   Pursuant to the Agreement, Ms. Jackson made monthly payments of

28  $1,195.00 to BOA on June 25, 2010 and on or about July 21, 2010. BOA accepted

1   these payments.

2        291.   On July 29, 2010, BOA sent Ms. Jackson an "Interest Only" loan

3   monthly statement that sets forth an "Interest Only Payment" in the amount of

4   $1,576.84 due on August 1, 2010. The July 29, 2010 statement includes a Past

5   Due Payment Amount of $7,884.20, a Partial Payment Balance of $1,208.56, a

6   Principal Balance of $259,633.10, a negative Escrow Balance of -$1,270.10 and

7   Outstanding Late Charges of $158.20. The July 29, 2010 statement lists the

8   interest rate on the loan as 5.750%. A true and correct copy of the July 29, 2010

9   statement is attached as Exhibit 72.

10       292.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

11  $1,195.00 to BOA on August 23, 2010. BOA accepted this payment.

12       293.   On August 30, 2010, BOA sent Ms. Jackson an "Interest Only" loan

13  monthly statement that sets forth an "Interest Only Payment" in the amount of

14  $1,576.84 due on September 1, 2010. The August 30, 2010 statement includes a

15  Past Due Payment Amount of $7,884.20, a Partial Payment Balance of $826.72, a

16  Principal Balance of $259,633.10, a negative Escrow Balance of -$938.17 and

17  Outstanding Late Charges of $195.52. The August 30, 2010 statement lists the

18  interest rate on the loan as 5.750%. A true and correct copy of the August 30,

19  2010 statement is attached as Exhibit 73.

20       294.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

21  $1,195.00 to BOA on September 20, 2010. BOA accepted this payment.

22       295.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

23  $1,195.00 to BOA on October 26, 2010. BOA accepted this payment.

24       296.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

25  $1,195.00 to BOA on November 22, 2010. BOA accepted this payment.

26       297.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

27  $1,195.00 to BOA on December 21, 2010. BOA accepted this payment.

28       298.   Pursuant to the Agreement, Ms. Jackson made a monthly payment of

**THIRD AMENDED CLASS ACTION COMPLAINT**                              59
Case No. 2:11-cv-04609-AHM (JCx)

1  $1,195.00 to BOA on January 24, 2011. BOA accepted this payment.

2  299.  Pursuant to the Agreement, Ms. Jackson made a monthly payment of

3  $1,195.00 to BOA on or about February 22, 2011. BOA accepted this payment.

4  300.  Pursuant to the Agreement, Ms. Jackson made a monthly payment of

5  $1,195.00 to BOA on March 21, 2011. BOA accepted this payment.

6  301.  BOA sent Ms. Jackson a letter dated March 31, 2011 informing her

7  that BOA has referred her mortgage loan to BOA's Foreclosure Review

8  Committee for review. The letter advises that Ms. Jackson, "…may be eligible to

9  take advantage of one of the options described below, which may stop the

10 foreclosure process." One of the options provided was a loan modification, which

11 "…would result in a more affordable monthly payment." A true and correct copy

12 of the March 31, 2011 letter is attached as Exhibit 74.

13 302.  Pursuant to the Agreement, Ms. Jackson made a monthly payment of

14 $1,195.00 to BOA in April, 2011. BOA returned this payment.

15 303.  Confused and concerned about the inaccurate information BOA was

16 sending to her, Ms. Jackson tried to contact BOA by telephone numerous times

17 during this period.

18 304.  In the meantime, BOA's collection department, through an

19 autodialer, has been continuously contacting Ms. Jackson to pressure her to pay

20 more than what she owes under the Agreement.

21 305.  BOA has been inaccurately reporting Ms. Jackson's payment history

22 to the credit reporting bureaus since the Agreement. As of August 12, 2011, BOA

23 is reporting Ms. Jackson's account as being "derogatory," "late 120 days" and in

24 foreclosure.

25 306.  Ms. Jackson has been damaged by BOA's imposition of past due

26 payments, late fees, other default-related fees and costs, foreclosure-related fees

27 and costs and escrow charges on Ms. Jackson loan account that are not due and

28 owing under the Agreement. These amounts are wrongful and have accrued on

1   Ms. Jackson's account because of BOA's failure to honor the Agreement. BOA is

2   demanding that Ms. Jackson pay these amounts to cure her alleged default and

3   avoid foreclosure.

4       307.   Ms. Jackson has spent dozens of hours attempting to communicate

5   with BOA to correct the errors on her account and to avoid foreclosure, to no

6   avail.

7       308.   Ms. Jackson has been living in fear and anxiety over the prospect of

8   losing her home. Had BOA honored the Agreement, Ms. Jackson would be on

9   track with her mortgage with affordable monthly payments. Instead, despite the

10  Agreement being in effect a year and a half, and being put on notice of its errors,

11  BOA continues to mismanage Ms. Jackson's loan account putting her at a

12  continued risk of foreclosure.

13      309.   On February 8, 2012, Ms. Jackson, along with Plaintiff Maria

14  Campusano also of Massachusetts, on behalf of themselves and similarly situated

15  Massachusetts borrowers, sent BOA a written demand for relief under the

16  Massachusetts' Consumer Protection Statute, M.G.L. §93A.

17      310.   BOA did not make a written tender of settlement in which the relief

18  tendered was reasonable in relation to the injury actually suffered by Ms. Jackson,

19  Ms. Campusano or the class within the meaning of M.G.L. c. 93A, §9(3).

20      **G.    Plaintiff Terri Kwake**

21      311.   Terri Kwake ("Ms. Kwake") is an individual who has been residing

22  in her Cheshire, Oregon home with her husband for over 20 years. The Kwakes

23  initially moved into the Cheshire residence to care for Mr. Kwake's ailing mother,

24  which they did for several years until Mr. Kwake's mother passed away.

25      312.   Terri Kwake ("Ms. Kwake") refinanced her primary residence,

26  located at 25951 Highway 36, Cheshire, Oregon, 97419, in 2007.  The refinanced

27  loan was immediately sold to Countrywide Home Loans Inc., d/b/a America's

28  Wholesale Lender (the "Countrywide loan").  The Countrywide loan was an

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    61
Case No. 2:11-cv-04609-AHM (JCx)

1   interest-only loan, the payments for which would increase after 5 years.  The
2   monthly payments during the first five-year period were $1,977.08.00.

3       313.   On information and belief, on or about April 29, 2009, BOA acquired
4   the servicing rights to the Countrywide loan.

5       314.   On or around August 2009, Ms. Kwake's financial condition changed
6   due to the downturn in the economy – and more particularly in the construction
7   industry in which both Ms. Kwake and her husband worked – and she fell behind
8   on her payments.

9       315.   On or about October 5, 2009, Ms. Kwake received a Notice of Intent
10  to Accelerate from BOA, which indicated that she was two months behind in
11  payments.  During November and December of 2009, and January 2010, Ms.
12  Kwake struggled to make at least one full payment each month, in order not to fall
13  further behind.  Ms. Kwake also contacted BOA during this period in order to
14  attempt to catch up on her payments.

15      316.   On or about February 19, 2010, Ms. Kwake made two full payments
16  to BOA, totaling $3,975.82, at the Eugene, Oregon BOA branch.  The teller
17  accepted the payment, but indicated Ms. Kwake remained one payment behind.

18      317.   On or about March 17, 2010, Ms. Kwake received a check from BOA
19  in the amount of $3,975.82, dated March 2, 2010, with a cover letter stating:
20  "Thank you for sending the enclosed payments.  Although we appreciate your
21  effort to settle your account, it is necessary to return these funds to you for the
22  following reason:  The amount remitted does not represent the total due."

23      318.   Consequently, on March 17, 2010, Ms. Kwake called BOA.  After
24  being transferred several times, Ms. Kwake spoke with BOA employee Patrice
25  Williams, who stated that she was a supervisor.  Ms. Williams informed Ms.
26  Kwake that she needed to make 3 full payments to bring the loan current.  Ms.
27  Kwake informed Ms. Williams that she could make the 3 full payments, in a total
28  amount of $5,939.27, in order to bring the loan current.  On or about March 23,

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    62
Case No. 2:11-cv-04609-AHM (JCx)

1    2010, Ms. Kwake mailed BOA a check in that amount.

2         319.   On or about March 17, 2010, Ms. Kwake received a notice from

3    BOA that her loan was in foreclosure.  The notice included a "Reinstatement

4    Calculation."

5         320.   During early March 2010, Ms. Kwake discussed the possibility of a

6    loan modification with BOA personnel.  BOA advised Ms. Kwake that she

7    qualified for a special modification program, and that BOA would be sending Ms.

8    Kwake the appropriate paperwork.

9         321.   Over the following 30 days, Ms. Kwake called BOA several times.

10   Each time, BOA told Ms. Kwake that the modification papers were in process,

11   and that she should continue checking back.

12        322.   Toward the end of April 2010, Ms. Kwake spoke with a BOA

13   representative who told her that BOA had sent the loan modification

14   documentation to Ms. Kwake by Federal Express at the end of March.  The BOA

15   representative indicated that the documentation had been returned to BOA without

16   being delivered.  Ms. Kwake informed the BOA representative that she had never

17   received the documentation.  The BOA representative indicated that they would

18   escalate a review of the file and call back in a week.

19        323.   On May 4, 2010, Ms. Kwake called BOA and spoke with a BOA

20   supervisor, Damion, at phone number (800) 262-4218.  Damion stated that the

21   documentation had been returned to BOA in the middle of April.  Ms. Kwake

22   asked Damion to what address BOA had sent the documentation.  Damion advised

23   Ms. Kwake that they had sent the documentation via Federal Express to Ms.

24   Kwake's United States Postal Service Post Office Box.  Ms. Kwake advised

25   Damion that Federal Express does not deliver to Post Office Boxes.  Damion put

26   Ms. Kwake on hold while he verified that fact.

27        324.   Damion returned to the line and agreed that Ms. Kwake was correct,

28   and that BOA had made a mistake by sending the documents via Federal Express

**THIRD AMENDED CLASS ACTION COMPLAINT**                            63
Case No. 2:11-cv-04609-AHM (JCx)

1  to a Post Office Box.  Damion indicated that he would immediately have the
2  documents sent by Federal Express to Ms. Kwake's street address.

3      325.   Damion also advised Ms. Kwake that her first modified loan payment
4  had been due May 1, 2010, and that Ms. Kwake could make that payment while
5  on the phone with Damion.  Ms. Kwake made the payment, in a total amount of
6  $949.85, while on the phone with Damion.  Damion gave Ms. Kwake a
7  confirmation number of 10166648.

8      326.   On Friday, May 7, 2010, Ms. Kwake received the modification
9  documentation from BOA via Federal Express to her home.  The documentation
10 required Ms. Kwake to respond by April 17, 2010.

11     327.   On May 11, 2010, Ms. Kwake went to the BOA branch office in
12 downtown Eugene, Oregon, and discussed the situation with Barbara Holmes, a
13 loan officer.  Ms. Holmes called the BOA loan servicing office on Ms. Kwake's
14 behalf, and BOA advised Ms. Holmes to send the signed modification agreement
15 back to their Pittsburgh, Pennsylvania processing center.   Ms. Holmes sent the
16 signed modification agreement on Ms. Kwake's behalf, as instructed.

17     328.   Federal Express delivered the signed modification agreement to BOA
18 on May 17, 2010.

19     329.   A true and correct copy of the permanent modification agreement
20 (the "Agreement") entered into between Ms. Kwake and BOA is attached hereto
21 as Exhibit 75.

22     330.   The cover letter BOA sent to Ms. Kwake accompanying the
23 Agreement included a summary of the Agreement's terms.  The Agreement cover
24 letter also assures that, "[BOA] is committed to providing you the help you need
25 to remain in your home." A true and correct copy of the Agreement cover letter is
26 attached as Exhibit 76.

27     331.   The Agreement amended and supplemented the mortgage and
28 promissory note on the Countrywide loan.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                   64
Case No. 2:11-cv-04609-AHM (JCx)

332.   Under the Agreement, the Countrywide loan is modified as follows:

- The modified principal and interest payment is $949.85.

- The Effective Date Agreement is May 1, 2010.

- The interest rate is modified to a variable interest rate starting at 3.750%, and increasing .250 percent each year to a maximum of 8.000%.

- The total Unpaid Principal Balance, which includes delinquent interest payments and fees in the amount of $11,952.48, for a total of $303,952.48.

333.   The modified monthly payment of $949.85 was and continues to be affordable for Ms. Kwake.

334.   On May 17, 2010, Ms. Kwake received a form letter from BOA stating that the loan modification was not processed because the "Note Modification Return Date Expired." Ms. Kwake immediately called BOA and advised them that the modification paperwork had not been sent by BOA to the correct address until May 5, 2010. The BOA representative instructed Ms. Kwake to continue making the modified loan payments, because the paperwork had not yet caught up to BOA's computer system.

335.   Ms. Kwake called BOA on multiple occasions over the following weeks and months. Each time, BOA advised Ms. Kwake that the modification was in place, that the paperwork was being finalized, and that Ms. Kwake should continue making her modified payments of $949.85.

336.   Ms. Kwake continued timely making payments of $949.85 each month, and has attempted to do so up to the present. BOA cashed each of Ms. Kwake's checks, until May 2011, when it began refusing Ms. Kwake's payments. Ms. Kwake remains willing and able to make the $949.85 payments.

337.   Ms. Kwake continued receiving monthly loan statements from BOA that did not reflect the terms of the Agreement, nor did they reflect the modified

1  loan payments she had been making.  Ms. Kwake repeatedly called BOA about

2  the discrepancies, and was repeatedly told not to worry, that the Agreement was in

3  place.

4       338.   On or about March 3, 2011, Ms. Kwake received from BOA a form

5  letter with a packet of documents informing her that she may be eligible for a loan

6  modification.  Receiving this packet, after already having been told by BOA that

7  the Agreement was in effect, was extremely upsetting to Ms. Kwake.

8       339.   Ms. Kwake again called BOA, and was again told that her

9  modification paperwork was still being processed.  On March 17, 2011, Ms.

10  Kwake wrote BOA, requesting a written explanation of the status of the

11  Agreement.  Ms. Kwake received no response.

12       340.   On or about April 10, 2011, Ms. Kwake received another form letter

13  from BOA, identical to the March 3, 2011 loan modification solicitation.

14       341.   On April 29, 2011, Ms. Kwake again wrote BOA, through her

15  attorney, requesting written confirmation of the status of the Agreement.  Neither

16  Ms. Kwake nor her attorney received any response.

17       342.   On May 13, 2011, Ms. Kwake's attorney again wrote to BOA,

18  requesting written confirmation of the status of the Agreement.  BOA did not

19  respond.

20       343.   On May 10, 2011, Ms. Kwake received yet a third loan modification

21  solicitation from BOA.

22       344.   On May 17, 2011, Ms. Kwake wrote to BOA to advise BOA that she

23  was satisfied with the Agreement entered into in May 2010.

24       345.   On or about June 8, 2011, BOA sent Ms. Kwake a check for

25  $1,809.07, with a cover letter indicating that the monthly payment due July 1,

26  2011, is $1,977.09, and that BOA would not accept a partial payment.  BOA

27  continues to refuse to accept payments from Ms. Kwake pursuant to the loan

28  modification.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    66
Case No. 2:11-cv-04609-AHM (JCx)

346.   Ms. Kwake has been damaged by BOA's imposition of past due payments, late fees, other default-related fees and costs, foreclosure-related fees and costs and escrow charges on Ms. Kwake's account that are not due and owing under the Agreement. These amounts are wrongful and have accrued on Ms. Kwake's account because of BOA's failure to honor the Agreement. BOA is demanding that Ms. Kwake pay these amounts to cure her alleged default and avoid foreclosure.

347.   Ms. Kwake is living in fear and anxiety over the prospect of losing the home she needs to shelter herself and her family.  Had BOA honored the Agreement, Ms. Kwake would be on track with her mortgage with affordable monthly payments. Instead, despite the Agreement being in effect almost two years, and being put on notice of its errors, BOA continues to mismanage Ms. Kwake's loan account putting her at risk of foreclosure.

**H.**   **Plaintiffs Denis Ingham and Eleanor Murphy**

348.   Denis Ingham and Eleanor Murphy ("Mr. Ingham" and "Ms. Murphy") are a married couple residing in Lowell, Massachusetts.  Both Mr. Ingham and Ms. Murphy are retired and have each suffered numerous medical setbacks over recent years including multiple heart attacks, strokes and surgery.

349.   Mr. Ingham and Ms. Murphy purchased their Lowell residence in December 2005 with a 30-year loan from Republic Bank (the "Republic Bank loan").

350.   At some point after Mr. Ingham and Ms. Murphy received the Republic Bank loan, the servicing of the loan was transferred to Countrywide Home Loans ("Countrywide").

351.   On information and belief, on or about January, 2009 BOA acquired the servicing rights to the Republic Bank loan from Countrywide.

352.   Faced with the financial hardship when Ms. Murphy lost her job and both she and Mr. Ingham began to suffer from medical problems, Mr. Ingham

1   reached out to BOA for loan modification assistance.

2        353.   Mr. Ingham and Ms. Murphy applied and qualified for a permanent

3   loan modification from BOA.

4        354.   Mr. Ingham and Ms. Murphy and BOA entered into a Loan

5   Modification Agreement ("Agreement") on the loan in April, 2011.  A true and

6   correct copy of the Agreement is attached as Exhibit 76A.

7        355.   The Agreement amended and supplemented the mortgage and

8   promissory note on the loan.

9        356.   Under the Agreement, the loan is modified as follows:

- The modified monthly payment is $883.77 (monthly principal interest of $587.70 plus monthly estimated escrow payment of $296.07).

- The first payment of $883.77 was due on April 1, 2011.

- The new principal balance is $218,683.94.  Of this amount, $24,612.39 is deferred and Mr. Ingham will not pay interest or make monthly payments on this deferred amount.  Thus, $194,071.55 is the interest bearing principal balance.

- The $194,071.55 interest bearing principal balance starts accruing interest at the rate of 2.000% as of March 1, 2011.

- The 2.000% modified interest rate would remain effective through Year 5 of the modified loan.  For Year 6, the interest rate would increase to 3.000% (resulting in a monthly principal and interest payment of $682.77, plus the monthly escrow payment amount).  For Year 7, the interest rate would increase to 4.000% (resulting in a monthly principal and interest payment of $783.12, plus the monthly escrow payment amount).  For Years 8 through 40, the interest rate would increase to 4.750% (resulting in a monthly principal and interest payment of $861.15, plus the monthly escrow payment amount).

- The new Maturity Date is March 1, 2051.

**THIRD AMENDED CLASS ACTION COMPLAINT**                    68
Case No. 2:11-cv-04609-AHM (JCx)

357.   The modified monthly payment of $883.77 was and continues to be affordable for Mr. Ingham and Ms. Murphy.

358.   To execute the Agreement, Mr. Ingham and Ms. Murphy were required to sign two copies of the Agreement to and return them to BOA with a payment of $883.77 by April 1, 2011.

359.   On April 27, 2011, Mr. Ingham and Ms. Murphy sent two copies of the signed Agreement to BOA by Federal Express with a payment of $883.77.

360.   BOA expressly permitted Mr. Ingham and Ms. Murphy to return the Agreement and payment after the April 1, 2011 deadline. BOA accepted their payment on May 6, 2011.

361.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a monthly payment of $883.77 to BOA on April 29, 2011, for the month of May. BOA accepted this payment.

362.   On May 26, 2011, BOA sent a notice to Mr. Ingham and Ms. Murphy stating that, "[t]he monthly payment due 11/01/2009 for your mortgage loan is $1,535.53." The notice further stated "[t]here is a total of $326.54 credited to your account, which does not represent a full monthly payment. Since we have not received the remaining amount of $1,208.99 required to satisfy the payment due 11/01/2009 we are returning these funds." The notice recommends that Mr. Ingham and Ms. Murphy call Bank of America immediately and that they may qualify for a number of options to assist them with their delinquency. A true and correct copy of the May 26, 2011 notice is attached as Exhibit 76B.

363.   On May 27, 2011, BOA sent Mr. Ingham and Ms. Murphy a monthly statement stating there was a payment due on June 1, 2011 in the amount of $1,965.98.  It also included a Past Due Payment Amount of $29,388.22, and a negative escrow balance of -$4,989.60.  The statement also listed Outstanding Late charges of $614.56 and a loan description describing the loan as Conventional w/PMI, a Contractual remaining term of 26 years, 3 months and

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    69
Case No. 2:11-cv-04609-AHM (JCx)

1  Interest rate of 6.375%. A true and correct copy of the May 27, 2011 statement is

2  attached as Exhibit 76C.

3       364.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

4  monthly payment of $883.77 to BOA on May 31, 2011, for the month of June.

5  BOA accepted this payment.

6       365.   On June 29, 2011 BOA sent Mr. Ingham and Ms. Murphy a monthly

7  statement that stated the next payment due on July 1, 2011 was in the amount of

8  $1,965.98. It also included a Past Due Payment Amount in the amount of

9  $30,954.20, a Partial Payment Balance in the amount of $883.77 and an Escrow

10  Balance of negative -$5,078.52. The June 29, 2011 statement describes the Loan

11  Type as a 30 Yr. Conventional loan with PMI with an Interest rate of 6.375%. The

12  statement also lists Outstanding Late Charges of $652.97 and Fees Due of

13  $105.00. A true and correct copy of the June 29, 2011 statement is attached as

14  Exhibit 76D.

15       366.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

16  monthly payment of $883.77 to BOA on July 1, 2011, for the month of July.

17  BOA accepted this payment.

18       367.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

19  monthly payment of $883.77 to BOA on July 31, 2011, for the month of August.

20  BOA accepted this payment.

21       368.   On August 8, 2011, BOA sent a notice to Mr. Ingham and Ms.

22  Murphy stating that, "[t]he monthly payment due 12/01/2009 for your mortgage

23  loan is $1,535.53."  The notice further states "[t]here is a total of $232.01 credited

24  to your account, which does not represent a full monthly payment.  Since we have

25  not received the remaining amount of $1,303.52 required to satisfy the payment

26  due 12/01/2009 we are returning these funds." A true and correct copy of the

27  August 8, 2011 notice is attached as Exhibit 76E.

28       369.   On August 18, 2011, BOA sent another notice to Mr. Ingham and

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    70
Case No. 2:11-cv-04609-AHM (JCx)

1   Ms. Murphy again stating that, "[t]he monthly payment due 12/01/2009 for your

2   mortgage loan is $1,535.53." The notice further stated "[t]here is a total of

3   $883.77 credited to your account, which does not represent a full monthly

4   payment.  Since we have not received the remaining amount of $651.76 required

5   to satisfy the payment due 12/01/2009 we are returning these funds." A true and

6   correct copy of the August 18, 2011 notice is attached as Exhibit 76F.

7        370.   On August 30, 2011, BOA sent Mr. Ingham and Ms. Murphy a

8   monthly statement stating there was a payment due on September 1, 2011 of

9   $1,965.98.  It also included a Past Due Payment Amount of $32,550.63, and a

10  negative escrow balance of -$5,644.55.  The statement also included an

11  "IMPORTANT NOTICE," stating that Mr. Ingham's account "remains seriously

12  delinquent." A true and correct copy of the August 30, 2011 statement is attached

13  as Exhibit 76G.

14        371.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

15  monthly payment of $883.77 to BOA on September 1, 2011, for the month of

16  September.  BOA accepted this payment.

17        372.   On September 13, 2011, BOA sent a notice to Mr. Ingham and Ms.

18  Murphy stating, "[t]he monthly payment due 12/01/2009 for your mortgage loan

19  is $1,535.53." The notice further stated "[t]here is a total of $883.77 credited to

20  your account, which does not represent a full monthly payment.  Since we have

21  not received the remaining amount of $651.76 required to satisfy the payment due

22  12/01/2009 we are returning these funds." A true and correct copy of this notice is

23  attached as Exhibit 76H.

24        373.   On September 20, 2011, BOA sent Mr. Ingham and Ms. Murphy a

25  monthly statement stating there was a payment due on October 1, 2011 of

26  $908.76.  It also included a Past Due Payment Amount of $2,620.50, a Partial

27  Payment Balance of $394.44, and a negative escrow balance of -$5,386.77. The

28  statement also included an "IMPORTANT NOTICE," stating that Mr. Ingham's

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    71
Case No. 2:11-cv-04609-AHM (JCx)

1   and Ms. Murphy's account "remains seriously delinquent."  The notice went on to

2   tell Mr. Ingham and Ms. Murphy, "Please give this matter your most urgent

3   attention.  Please pay the total amount due immediately."  A true and correct copy

4   of the September 20, 2011 statement is attached as Exhibit 76I.

5          374.   On September 20, 2011, BOA sent Mr. Ingham and Ms. Murphy an

6   additional statement entitled "Escrow Account Review."  The statement stated

7   that there was an escrow shortage of $4,971.58 due on November 1, 2011.  The

8   statement also set forth a new monthly home loan payment, effective November

9   2011, of $1,339.31.  A true and correct copy of the September 20, 2011 Escrow

10  Account Review is attached as Exhibit 76J.

11         375.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

12  monthly payment of $883.77 to BOA on September 30, 2011, for the month of

13  October.  BOA accepted this payment.

14         376.   On October 28, 2011, BOA sent Mr. Ingham and Ms. Murphy a

15  monthly mortgage statement stating that there was a payment due on November 1,

16  2011 of $1,339.31.  It also included a Past Due Payment Amount of $2,620.50, a

17  Partial Payment Balance of $10.27, Fees Due of $150.00 and a negative escrow

18  balance of -$1,423.35. A true and correct copy of the October 28, 2011 statement

19  is attached as Exhibit 76K.

20         377.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

21  monthly payment of $883.77 to BOA on November 1, 2011, for the month of

22  November.  BOA accepted this payment.

23         378.   On November 29, 2011, BOA sent Mr. Ingham and Ms. Murphy a

24  monthly statement stating there was a payment due on December 1, 2011 in the

25  amount of $1,339.31.  It also included a Past Due Payment Amount of $3,086.31,

26  and a negative escrow balance of -$1,226.47.  The statement also listed Fees Due

27  of $150.00 and a loan description describing the loan as Conventional ARM

28  w/PMI, a Contractual remaining term of 39 years, 7 months and Interest rate of

**THIRD AMENDED CLASS ACTION COMPLAINT**                           72
Case No. 2:11-cv-04609-AHM (JCx)

1   2.000%. A true and correct copy of the November 29, 2011 statement is attached

2   as Exhibit 76L.

3       379.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

4   monthly payment of $883.77 to BOA on December 1, 2011 for the month of

5   December.  BOA accepted this payment.

6       380.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

7   monthly payment of $883.77 to BOA on December 31, 2011 for the month of

8   January, 2012.  BOA accepted this payment.

9       381.   On January 30, 2012, BOA sent Mr. Ingham and Ms. Murphy a

10  monthly statement stating there was a payment due on February 1, 2012 in the

11  amount of $1,339.31.  It also includes a Past Due Payment Amount of $4,017.93,

12  and a negative escrow balance of -$1,347.14.  The statement also lists a Partial

13  Payment Balance (unapplied funds) of $20.54. A true and correct copy of the

14  January 30, 2012 statement is attached as Exhibit 76M.

15      382.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

16  monthly payment of $883.77 to BOA on February 1, 2012 for the month of

17  February, 2012.  BOA accepted this payment.

18      383.   Pursuant to the Agreement, Mr. Ingham and Ms. Murphy made a

19  monthly payment of $883.77 to BOA on March 1, 2012 for the month of March,

20  2012.  BOA accepted this payment.

21      384.   Confused and concerned about the inaccurate information BOA was

22  sending to them, Mr. Ingham and Ms. Murphy on their own and, through a legal

23  services organization, have attempted to communicate with BOA numerous times

24  during this time period but is unable to get any information about the Agreement.

25      385.   On information and belief, BOA has been inaccurately reporting Mr.

26  Ingham's and Ms. Murphy's payment history to the credit reporting bureaus since

27  the Agreement.

28      386.   Mr. Ingham and Ms. Murphy have been damaged by BOA's

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                    73
Case No. 2:11-cv-04609-AHM (JCx)

1  imposition of past due payments, late fees, other default-related fees and costs and

2  escrow charges on Mr. Ingham's and Ms. Murphy's loan account that are not due

3  and owing under the Agreement. These amounts are wrongful and have accrued

4  on Mr. Ingham's and Ms. Murphy's account because of BOA's failure to honor

5  the Agreement. BOA is demanding that Mr. Ingham and Ms. Murphy pay these

6  amounts to keep the loan out of delinquency.

7         387.   Mr. Ingham and Ms. Murphy have been living in fear and anxiety

8  over the prospect of losing their home. Had BOA honored the Agreement, Mr.

9  Ingham and Ms. Murphy would be on track with their mortgage with affordable

10  monthly payments. Instead, despite the Agreement being in effect for a year and

11  being put on notice of its errors, BOA continues to mismanage Mr. Ingham's and

12  Ms. Murphy's loan account, putting them at a continued risk of foreclosure.

13         388.   On February 8, 2012, Plaintiffs Maria Campusano and Rita Jackson

14  on behalf of themselves and similarly situated Massachusetts borrowers, sent

15  BOA a written demand for relief under the Massachusetts' Consumer Protection

16  Statute, M.G.L. §93A. Mr. Ingham and Ms. Murphy are among the similarly

17  situated Massachusetts borrowers for whom the 93A Demand was sent.

18         389.   BOA did not make a written tender of settlement in which the relief

19  tendered was reasonable in relation to the injury actually suffered by Ms. Jackson,

20  Ms. Campusano, Mr. Ingham, Ms. Murphy or the class within the meaning of

21  M.G.L. c. 93A, §9(3).

22  **I.**    **General Factual Allegations**

23         390.   On information and belief, in tens of thousands of cases, BOA has

24  failed to honor Agreements, by failing to timely implement the terms of the

25  Agreements.

26         391.   A former BOA "Home Retention Specialist," who worked in BOA's

27  Texas call center collecting delinquent accounts reports that approximately 10%

28  of the telephone calls made through BOA's auto dialer system for the purpose of

**THIRD AMENDED CLASS ACTION COMPLAINT**                                74
Case No. 2:11-cv-04609-AHM (JCx)

1    delinquent collections were made to homeowners who had Agreements, even

2    though those homeowners were current under their Agreements.

3         392.   This former BOA employee also reports that BOA's collection

4    employees were incentivized by payments of bonuses to collect amounts in excess

5    of amounts due under the Agreements, even when it was apparent in BOA's

6    system that these amounts were not due and owing.

7         393.   By failing to implement Agreements, BOA routinely imposes

8    improper default and delinquency-related fees, costs and charges on homeowners'

9    loan accounts, including, without limitation, late fees, property inspection fees and

10   foreclosure fees and costs. These charges, in turn, generate additional improper

11   fees, charges and costs which escalate the balance due and result in improper

12   foreclosure activity.

13        394.   BOA homeowners with Agreements like the Plaintiffs' confusing and

14   inaccurate monthly mortgage statements and other correspondence from BOA.

15        395.   BOA homeowners with Agreements like the Plaintiffs who have

16   attempted to contact BOA to obtain information about the Agreements are unable

17   to get accurate information, and in some instances are not able to get any answers

18   to their questions, from BOA. BOA representatives routinely provide homeowners

19   with wrong information about the status of the Agreements, information that

20   conflicts with the terms of the Agreements, and/or avoid answering borrowers

21   questions. BOA routinely transfers homeowners who contact it to multiple

22   representatives and departments, leaving borrowers with no single point of contact

23   at BOA on whom they can rely to be informed about their loan accounts.

24                        **V.    CLASS ALLEGATIONS**

25        396.   Plaintiffs repeat and re-allege every allegation above as if set forth

26   herein in full.

27        397.   This class action is brought by the Plaintiffs on behalf of themselves

28   and all homeowners in the United States whose residential mortgage loans are or

---

1   have been serviced by Defendants and who:

2          a.      since January 1, 2008, entered into a permanent loan

3                  modification agreement ("Agreement") with Defendants; and

4          b.      made the first payment as required under the Agreement; and

5          c.      following the Effective Date of the Agreement, received

6                  demands for payment from Defendants that were inconsistent

7                  with the terms of the Agreement.

8      398.   In the alternative and for the purpose of Plaintiffs' breach of contract

9   and consumer protection act claims, the named Plaintiffs seek to represent

10   statewide classes under the corresponding state laws of the following states:

11   California, Massachusetts, Oregon, Vermont and Washington. For each of these

12   five states, each statewide class is defined respectively as follows: Individuals

13   residing in the respective state whose home mortgage loans are or have been

14   serviced by Defendants and who:

15         a.      since January 1, 2008, entered into a permanent loan

16                 modification agreement ("Agreement") with Defendants; and

17         b.      made the first payment as required under the Agreement; and

18         c.      following the Effective Date of the Agreement, received

19                 demands for payment from Defendants that were inconsistent

20                 with the terms of the Agreement.

21      399.   Each Plaintiff seeks to represent a class of individuals in the state in

22   which their real property at issue is located.

23      400.   Plaintiffs sue on their own behalf and on behalf of a class of persons

24   under Federal Rule of Civil Procedure 23(a) and (b)(2) and (b)(3).

25      401.   Plaintiffs do not know the exact size or identities of the members of

26   the proposed class, since such information is in the exclusive control of

27   Defendants. Based on the number of permanent loan modifications Defendants

28   completed in 2008, 2009, 2010 and 2011 (which total approximately 1,000,000),

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                   76
Case No. 2:11-cv-04609-AHM (JCx)

1  Plaintiffs believe that the class encompasses tens of thousands of individuals

2  whose identities can be readily ascertained from Defendants' books and records.

3  Therefore, the proposed class is so numerous and geographically disbursed that

4  joinder of all members is impracticable.

5      402.  All members of the class have been subject to and affected by the

6  same conduct. The claims are based on form Agreements, uniform loan

7  modification processing requirements, Defendants' automated systems for

8  maintaining loan account records and Defendants' policies and procedures. There

9  are questions of law and fact that are common to the class, and that predominate

10  over any questions affecting only individual members of the class. These

11  questions include, but are not limited to the following:

12           a.   the nature, scope and operation of Defendants' obligations to

13                homeowners under permanent loan modification agreements;

14           b.   whether Defendants' conduct after the execution of the

15                permanent loan modification agreements is a breach of

16                contract; and

17           c.   whether the Court can order Defendants to pay damages and

18                what the proper measure of damages is, and also whether the

19                Court can enter injunctive relief.

20      403.  The claims of the individual named Plaintiffs are typical of the claims

21  of the class and do not conflict with the interests of any other members of the class

22  in that all the Plaintiffs and the other members of the class were subject to the

23  same conduct by BOA, they all executed permanent loan modification agreements

24  and BOA breached those Agreements by failing to implement their terms and

25  attempting to collect and collecting amounts from Plaintiffs and others that were

26  not due and owing under the Agreements.

27      404.  The individual named Plaintiffs will fairly and adequately represent

28  the interests of the class. They are committed to the vigorous prosecution of the

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    77
Case No. 2:11-cv-04609-AHM (JCx)

1   class' claims and have retained attorneys who are qualified to pursue this litigation

2   and have experience in class actions, and in particular mortgage-related consumer

3   class actions.

4       405.   A class action is superior to other methods for the fast and efficient

5   adjudication of this controversy. A class action regarding the issues in this case

6   does not create any problems of manageability.

7       406.   This putative class action meets both the requirements of Fed. R. Civ.

8   P. 23(a), 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

9       407.   The Defendants have acted or refused to act on grounds that apply

10   generally to the class so that final injunctive relief or corresponding declaratory

11   relief is appropriate for the class as a whole.

12                 **VI.**   <u>**CAUSES OF ACTION**</u>

13                     **FIRST CAUSE OF ACTION**

14                        **Breach of Contract**

15       408.   Plaintiffs repeat and re-allege every allegation above as if set forth

16   herein in full.

17       409.   Plaintiffs bring this claim on their own behalf and on behalf of each

18   member of the national class (or in the alternative for each state contract class)

19   described above.

20       410.   The Agreements described above are valid and enforceable contracts

21   under the contract law of all 50 states, including under the laws of California,

22   Massachusetts, Oregon, Vermont and Washington because the elements of

23   contract law in every state are materially identical and because:

24              a.     The Agreements BOA sent to Plaintiffs constitute valid offers;

25              b.     Plaintiffs and the class accepted BOA's permanent loan

26                    modification agreement offers by signing and returning the

27                    Agreements and making the Agreements' required payments;

28                    and

1    c. The Agreements are supported by consideration in that they

2      provide both a benefit to BOA – for reasons including, without

3      limitation, that it receives payments on loans that would

4      otherwise default, because it obtains financial information

5      from homeowners for the purposes of re-underwriting loans in

6      its servicing portfolio - and a detriment to Plaintiffs and the

7      class, insofar as they are required to take actions - such as

8      providing documentation to BOA of their current income and

9      making legal representations about their personal

10     circumstances - that they otherwise had no legal duty to

11     undertake.

12 411. In addition, the Agreements' express language makes clear that they

13 are contracts. Among other provisions, the Agreements state, "[t]his Loan

14 Modification Agreement ('Agreement'), made this [date] between [Plaintiff(s)] and

15 BOA Home Loan Servicing, LP (the 'Lender'), amends and supplements (1) the

16 Mortgage, Deed of Trust, or Deed to Secure Debt (the 'Security Instrument'),

17 dated [date] in the amount of [loan amount] and (2) the Note secured by, the

18 Security Instrument, which covers the real and personal property described in the

19 Security Instrument and defined therein as the 'Property," located at [address]."

20 The Agreements also provide that, "[i]n consideration of the mutual promises and

21 agreements exchanged, the parties hereto agree as follows...".

22 412. By failing to implement and honor the terms of the Agreements,

23 Defendants breached the Agreements.

24 413. Defendants breached the Agreements by attempting to collect and

25 collecting amounts that were not due and owing under the Agreements, including,

26 without limitation, past due payments, interest, late fees, default-related fees and

27 costs such as property inspection fees, property preservation fees, appraisal fees,

28 title report fees, recording fees and/or subordination fees, foreclosure fees and

**THIRD AMENDED CLASS ACTION COMPLAINT**     79
Case No. 2:11-cv-04609-AHM (JCx)

1   costs and escrow account charges.

2        414.   Defendants breached the Agreements by referring loans that are
3   contractually current under the Agreements to foreclosure, beginning foreclosure
4   proceedings and/or foreclosing on homeowners' mortgages.

5        415.   Defendants breached the Agreements by converting the terms of
6   homeowners' Agreements back to the terms of the original Note and Security
7   Instrument when homeowners were making payments due under the Agreements.

8        416.   Defendants breached the Agreements by assessing fees, charges and
9   costs to homeowners' modified loans in a manner that is inconsistent with the
10  terms of the Agreements, including, without limitation, imposing late fees and
11  other default-related fees and costs on homeowners' accounts and by mismanaging
12  escrow accounts.

13       417.   Defendants' breaches are also breaches of homeowners' underlying
14  promissory notes and security instruments as modified.

15       418.   Plaintiffs have suffered harm and are threatened with additional harm
16  resulting from Defendants' breaches. Defendants have imposed and assessed
17  improper default-related fees and costs, past due payments, escrow charges,
18  corporate advances and other amounts that remain pending on homeowners' loan
19  accounts. On information and belief, Plaintiffs and others like them have paid
20  amounts not contractually due and owing under the Agreements.

21       419.   In some cases, Defendants have begun foreclosure proceedings on
22  Plaintiffs' and class members' homes. On information and belief, putative class
23  members have lost their homes in foreclosure, and have been damaged in the form
24  of a lost property interest.

25       420.   Plaintiffs have been damaged by Defendants' reporting of inaccurate
26  payment information and status of their modified loans under the Agreement to
27  the credit reporting bureaus. Defendants' inaccurate reporting has negatively
28  affected Plaintiffs' credit scores, preventing them from being able to obtain credit.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    80
Case No. 2:11-cv-04609-AHM (JCx)

1    421.   Plaintiffs have been damaged because they have had to incur out-of-

2    pocket costs and time off work in attempts to resolve these issues with

3    Defendants.

4                          **SECOND CAUSE OF ACTION**

5                              **Injunctive Relief**

6    422.   Plaintiffs repeat and re-allege every allegation above as if set forth

7    herein in full.

8    423.   BOA is obligated to comply with the terms of the Agreements it

9    executed with homeowners.

10   424.   BOA breached and continues to breach the Agreements.

11   425.   As a result of BOA's breaches, Plaintiffs and the class will be

12   irreparably injured in the future. Among other things, BOA's failure to implement

13   the Agreements and referring homeowners to collections and foreclosure will

14   result in unnecessary and wrongful foreclosures, homeowners paying more than

15   they are obligated to pay under the Agreements, improper negative credit

16   reporting and lost property interests.

17   426.   Plaintiffs and the class do not have a plain, adequate, speedy, or

18   complete remedy at law to address the wrongs alleged in this Complaint, and will

19   suffer irreparable injury as a result of BOA's misconduct unless injunctive relief is

20   granted.

21   427.   Plaintiffs and the class are therefore entitled to an injunction

22   requiring BOA to comply with the terms of the Agreements and to correct

23   Plaintiffs' and class members' loan accounts consistent with the terms of the

24   Agreements.

25   / / /

26   / / /

27   / / /

28   / / /

**THIRD CAUSE OF ACTION**

**Violations of the California Business & Professions Code §§ 17200 et seq. By Plaintiff Craig Iden on behalf of himself and a California Class of Borrowers**

428.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

429.   This cause of action is brought by Plaintiff Craig Iden, whose property is located in California, on behalf of a California class of borrowers against Defendants.

430.   California Business & Professions Code §§ 17200 *et seq*. ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice." The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id*. § 17203.

431.   BOA engaged in unlawful, unfair or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq*., by engaging in such unlawful conduct as: (a) misapplying or failing to apply borrower payments under Agreements; (b) seeking to collect and collecting amounts that are greater than what is due and owing under Agreements; (c) using aggressive collection tactics, including without limitation, the use of an autodialer to call borrowers multiple times during a week or single day and threatening foreclosure to induce borrowers to pay more than what is due and owing under Agreements; (d) improperly characterizing borrowers' accounts as being in default or delinquent status to generate unwarranted fees; (e) conducting wrongful foreclosure activity on borrowers' homes despite borrowers making full and regular payments under Agreements; (f) improperly reporting negative information about the status of borrowers' loan accounts to the credit reporting bureaus resulting in long-term damage to their credit ratings; (g) employing

1    egregiously misleading and confusing customer service tactics, making it

2    impossible for borrowers to obtain information about their loan accounts and

3    foreclosure activity; and (h) continuing to dishonor Agreements despite being on

4    notice of the errors.

5         432.   The foregoing acts and practices are also unfair and/or fraudulent

6    within the meaning of §17200 in that they are likely to mislead the public as to the

7    amounts actually owed on their loans, and in that they force customers to pay

8    amounts they do not actually owe under threat of losing their homes.

9         433.   The foregoing acts and practices have caused substantial harm to Mr.

10   Iden, the class of California borrowers he seeks to represent and the general

11   public.

12        434.   By reason of the foregoing, BOA has been unjustly enriched at the

13   expense of Mr. Iden and the class of California borrowers he seeks to represent

14   and should be required to make restitution to them and the general public, and/or

15   be enjoined from continuing in such practices pursuant to §§17203 and 17204 of

16   the California Business & Professions Code.

17        435.   As a result of these violations and unlawful, unfair, and fraudulent

18   business practices, Mr. Iden and the class of California borrowers he seeks to

19   represent have suffered injury in fact and lost money, including but not limited to,

20   payment of amounts greater than what is due and owing under the Agreements,

21   payments of improper default-related fees and charges, and filing fees for

22   emergency bankruptcy petitions to stop wrongful foreclosure activity.

23        436.   Pursuant to California Business and Professions Code §17200 *et seq*.,

24   Mr. Iden and the class of California borrowers he seeks to represent are entitled to

25   enjoin BOA's practice of breaching and disavowing Agreements.

26        437.   Pursuant to Code of Civil Procedure § 1021.5, Mr. Iden and the class

27   of California borrowers he seeks to represent are entitled to recover reasonable

28   attorney's fees, costs, and expenses incurred in bringing this action.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    83
Case No. 2:11-cv-04609-AHM (JCx)

### FOURTH CAUSE OF ACTION

**Violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A and Applicable Regulations By Plaintiffs Maria Campusano, Rita Jackson, Denis Ingham and Eleanor Murphy on behalf of themselves and a Massachusetts Class of Borrowers**

438.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

439.   This cause of action is brought by Plaintiffs Maria Campusano, Rita Jackson, and Denis Ingham and Eleanor Murphy, whose properties are located in Massachusetts, of behalf of a Massachusetts class of borrowers against BOA.

440.   The Massachusetts Consumer Protection Act, M.G.L. c. 93A, §2(a) prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

441.   BOA's conduct as set forth herein is unfair and deceptive in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2, because BOA, among other things, has engaged in systematic breaches of Agreements; has engaged in inaccurate credit reporting that will have a long-term negative impact on borrowers' credit ratings; has engaged in unrestrained and unwarranted collection activity through, among other methods, use of a telephone autodialer; has demanded payments in incorrect amounts and has threatened action, such as foreclosure, that is not legally permitted to take in order to collect these amounts; has generated unwarranted late fees and default and delinquency charges on borrowers accounts; and has instituted wrongful foreclosure actions against borrowers who are making payments under Agreements. BOA's conduct is knowing and willful because it has refused to rectify its errors after being repeatedly informed by borrowers and others acting on their behalf of its breaches.

442.   BOA's conduct likewise violates applicable regulations promulgated by the Massachusetts Attorney General pursuant to M.G.L. c. 93A, §2(c) including, without limitation:

---

a.    940 C.M.R. § 3.05, in that BOA made deceptive representations about the amounts due and owing under Agreements and the status of borrowers' loan accounts;

b.    940 C.M.R. § 3.16, in that BOA's conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer lending business;

c.    940 C.M.R. § 3.16, in that its conduct violates the requirement of good faith and fair dealing applicable to contracts under M.G.L. c. 106, §§1-203;

d.    940 C.M.R. § 3.16, in that its conduct violated existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare;

443.   Ms. Campusano, Ms. Jackson, Mr. Ingham, Ms. Murphy and the class of Massachusetts borrowers they seek to represent have been injured by virtue of BOA's violations. These injuries include, but are not limited to:

a.    Assessment of improper fees and charges on their loan accounts;

b.    Payment of monies in excess of what is contractually due and owing under Agreements;

c.    Wrongful foreclosure activity; and

d.    Negative credit reporting.

444.   BOA's conduct as described in this complaint was and is willful or knowing within the meaning of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §9 insofar as BOA knew or should have known that it has and is breaching Agreements because Ms. Campusano, Ms. Jackson, Mr. Ingham, Ms. Murphy and the class of Massachusetts borrowers they seek to represent, as well as others acting on their behalves, have contacted BOA on numerous occasions by

1   telephone and in writing to notify BOA of its errors and to attempt to obtain

2   information about their loan accounts and Agreements.

3        445.   Ms. Campusano, Ms. Jackson, Mr. Ingham, Ms. Murphy and the

4   class of Massachusetts borrowers they seek to represent complied with the pre-suit

5   notice requirement of M.G.L. c. 93A§ 9(3). On February 8, 2012, Maria

6   Campusano and Rita Jackson, on behalf of themselves and similarly situated

7   Massachusetts borrowers, through counsel, sent a demand for relief to counsel for

8   BOA.

9        446.   BOA responded to the demand letter on March 9, 2012, but failed to

10   make a written tender of settlement in which the relief tendered was reasonable in

11   relation to the injury actually suffered by Ms. Campusano, Ms. Jackson, Mr.

12   Ingham, Ms. Murphy and the class of Massachusetts borrowers they seek to

13   represent within the meaning of M.G.L. c. 93A, §9(3). Ms. Campusano and Ms.

14   Jackson therefore rejected BOA's proposal.

15       447.   BOA's refusal to grant relief upon demand was and is in bad faith,

16   with knowledge or reason to know that the act or practice complained of violated

17   M.G.L. c. 93A, §2.

18       448.   Pursuant to M.G.L. c. 93A, §11, Ms. Campusano, Ms. Jackson, Mr.

19   Ingham, Ms. Murphy and the class of Massachusetts borrowers they seek to

20   represent are entitled to recover reasonable attorney's fees, costs, and expenses

21   incurred in bringing this action.

22

### FIFTH CAUSE OF ACTION

23

24   **Violations of the Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq*.**
     **and Applicable Regulations By Plaintiff Terri Kwake on behalf of herself and**
     **an Oregon Class of Borrowers**

25

26       449.   Plaintiffs repeat and re-allege every allegation above as if set forth

   herein in full.

27

28       450.   This cause of action is brought by Plaintiff Terri Kwake, whose

1    property is located in Oregon, of behalf of an Oregon class of borrowers against

2    BOA.

3         451.   The Oregon Unlawful Trade Practices Act, O.R.S. 646.605 *et seq*.

4    protects people who obtain real estate, goods or services, including loans and

5    extensions of credit, primarily for personal, family or household purposes from

6    fraudulent and unfair business practices.

7         452.   BOA's conduct as set forth herein violates the Oregon Unlawful

8    Trade Practices Act, O.R.S. 646.605 *et seq*. and applicable regulations

9    promulgated by the Oregon Attorney General pursuant to O.R.S 646.608(1)(u)

10   and (4).

11        453.   The properties subject to Agreements in this case are the primary

12   residences of Ms. Kwake and the class of Oregon borrowers she seeks to

13   represent.

14        454.   Among other provisions, by the conduct described herein, BOA has

15   violated 646.608(1)(k), by making false and/or misleading representations about

16   Ms. Kwake's and the class of Oregon borrowers' she seeks to represent mortgage

17   obligations under Agreements, and 646.608(1)(u) by engaging in unfair and

18   deceptive acts and practices by collecting and/or attempting to collect amounts not

19   due and owing under Agreements, by assessing and/or charging improper default

20   related fees and costs that it is not legally authorized to assess and/or charge under

21   Agreements, by misrepresenting the status of Agreements and by failing to act in

22   good faith because it has not honored Agreements, it has failed to provide the Ms.

23   Kwake and the class of Oregon borrowers she seeks to represent with accurate

24   information pertaining to the status of their loan accounts and Agreements despite

25   Ms. Kwake's and the class of Oregon borrowers' she seeks to represent efforts to

26   contact BOA and have their loan accounts corrected. This conduct also violates

27   currently effective Oregon Administrative Rules promulgated by the Oregon

28   Department of Justice relating to mortgage servicing, OAR 137-020-0805.

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    87
Case No. 2:11-cv-04609-AHM (JCx)

1    455.   BOA's violations of the Oregon Unlawful Trade Practices Act,

2    O.R.S. 646.605 *et seq*. were willful. BOA knew or should have known that it was

3    failing to honor Agreements because Ms. Kwake and the class of Oregon

4    borrowers she seeks to represent contacted BOA on numerous occasions to notify

5    it of its errors and to attempt to correct their loan accounts.

6    456.   BOA's conduct has caused Ms. Kwake and the class of Oregon

7    borrowers she seeks to represent injury. They have suffered ascertainable

8    monetary injury by BOA's collection of amounts in excess of what is due and

9    owing under the Agreements and assessment of improper fees and costs on their

10   loan accounts, thereby causing them to lose money. They are at risk of losing their

11   property interests by virtue of BOA putting them into unnecessary default and

12   foreclosure.

13   457.   Pursuant to O.R.S. 646.638(3), Ms. Kwake and the class of Oregon

14   borrowers she seeks to represent are entitled to recover reasonable attorney fees.

15   **SIXTH CAUSE OF ACTION**

16   **Violations of the Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, §§2451**
     **through 2480g and Applicable Regulations By Plaintiffs William Roberson**
17   **and Christina Perez on behalf of herself and a Vermont Class of Borrowers**

18   458.   Plaintiffs repeat and re-allege every allegation above as if set forth

19   herein in full.

20   459.   This cause of action is brought by Plaintiffs William Roberson and

21   Christina Perez, whose property is located in Vermont, of behalf of a Vermont

22   class of borrowers against BOA.

23   460.   The Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, §§2451, *et.*

24   *seq*. prohibits unfair methods of competition in commerce and unfair or deceptive

25   acts or practices in commerce.

26   461.   BOA's conduct as set forth herein violates the Vermont Consumer

27   Fraud Act, Vt. Stat. Ann. Tit. 9, §§2451 *et seq*. and applicable regulations

28

1   promulgated by the Vermont Attorney General pursuant to Vt. Stat. Ann. Tit. 9,

2   §§2451.

3       462.   In particular, BOA's conduct violates the Vermont Consumer Fraud

4   Act because BOA made misrepresentations to Mr. Roberson, Ms. Perez and the

5   class of Vermont borrowers they seek to represent as to the status of their

6   Agreements, the amounts contractually due and owing under Agreements, about

7   the status of their loan accounts and whether they were properly in default and

8   foreclosure. These misrepresentations mislead and/or are likely to mislead the Mr.

9   Roberson, Ms. Perez and the class of Vermont borrowers they seek to represent.

10      463.   Mr. Roberson's, Ms. Perez's and the class of Vermont borrowers'

11  they seek to represent interpretations of BOA's representations were reasonable

12  because the representations came in the form of written documents from BOA's

13  offices, such as the Agreements, monthly mortgage statements, letters, and, in

14  instances of foreclosure, court documents and other written correspondence from

15  BOA and attorneys acting on its behalf.

16      464.   BOA's misleading representations about the status of Mr. Roberson's

17  and Ms. Perez's and the class of Vermont borrowers' Agreements are material in

18  that they affected their purchasing decisions relating to their credit and in finding

19  alternative sources of financing to keep their homes.

20      465.   Mr. Roberson and Ms. Perez and the class of Vermont borrowers

21  they seek to represent relied on the statements BOA made to them about the status

22  of their Agreements.

23      466.   Mr. Roberson, Ms. Perez and the class of Vermont borrowers they

24  seek to represent have suffered injury by virtue of BOA's conduct, including but

25  not limited to, the assessment and/or payment of amounts greater than what is due

26  and owing under the Agreements, the assessment and/or payments of improper

27  default-related fees and charges, and wrongful foreclosure proceedings.

28      467.   Pursuant to Code of Civil Procedure 9 V.S.A. §2461(b) Mr.

**THIRD AMENDED CLASS ACTION COMPLAINT**                                    89
Case No. 2:11-cv-04609-AHM (JCx)

1    Roberson, Ms. Perez and the class of Vermont borrowers they seek to represent

2    are entitled to recover reasonable attorney's fees incurred in bringing this action.

3        468.   BOA's conduct described herein also violates applicable regulations

4    promulgated by the Vermont Attorney General pursuant to Vt. Stat. Ann. Tit. 9,

5    §§2453(a), including, without limitation:

6                a.    CF 104.04, in that BOA used false, fraudulent, deceptive,

7                      and/or misleading representations and/or means to collect

8                      and/or attempt to collect the Mr. Roberson, Ms. Perez and the

9                      class of Vermont borrowers' mortgage debts under

10                     Agreements. In particular, BOA's representations created in

11                     the minds of Mr. Roberson, Ms. Perez and the class of

12                     Vermont borrowers they seek to represent a false impression of

13                     the character, extent or amount of BOA's claim against them

14                     and of their status in foreclosure proceedings. BOA has further

15                     misrepresented that Mr. Roberson's, Ms. Perez's and the class

16                     of Vermont borrowers' debts may be increased by the addition

17                     of attorney's fees, investigation fees, service fees, and/or other

18                     fees or charges, that could not legally be added to the existing

19                     obligation; and

20               b.    CF 104.05 in that BOA used unfair and/or unconscionable

21                     means to collect the Mr. Roberson's, Ms. Perez's and the class

22                     of Vermont borrowers' mortgage debts, including, without

23                     limitation, the collection and/or attempt to collect interest or

24                     other charges, fees, and/or expense incidental to the principal

25                     obligation that are not authorized under the Agreements or

26                     legally chargeable to them.

27   / / /

28   / / /

**THIRD AMENDED CLASS ACTION COMPLAINT**                                  90
Case No. 2:11-cv-04609-AHM (JCx)

## SEVENTH CAUSE OF ACTION

**Violations of the Washington Consumer Protection Act, R.C.W. 19.86.010 *et seq*. By Plaintiffs Nathaniel Perrone and Emily Perrone on behalf of themselves and a Washington Class of Borrowers**

469.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

470.   This cause of action is brought by Plaintiffs Nathaniel and Emily Perrone, whose property is located in Washington, of behalf of a Washington class of borrowers against BOA.

471.   The Washington Consumer Protection Act, R.C.W. 19.86.010 *et seq*. prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

472.   BOA's conduct as set forth herein violates the Washington Consumer Protection Act, R.C.W. 19.86.010 *et seq*. insofar as it is unfair and deceptive and is in the course of trade or commerce. The claims of Mr. Perrone, Ms. Perrone and the class of Washington borrowers they seek to represent arise from consumer transactions, namely loan modifications, that impact the public interest.

473.   BOA's conduct has an impact on the public interest because borrowers who otherwise can afford to pay under Agreements are being forced unnecessarily into default and foreclosure. Such conduct results in wrongful foreclosures, which causes depreciation in home values and displacement of families, which affect entire communities.

474.   BOA's conduct has an impact on the public interest within the meaning of Wash. Rev. Code §19.86.093 because its acts: (1) were committed in the course of its regular mortgage loan servicing business, (2) constitute a pattern and generalized course of conduct affecting many of its borrowers, including Mr. Perrone, Ms. Perrone and the class of Washington borrowers they seek to represent, (3) have a real and substantial potential for repetition because it continued and has continued to breach Agreements with Mr. Perrone, Ms. Perrone

1   and the class of Washington borrowers they seek to represent despite being on

2   notice of its wrongful conduct, and (4) the acts are not limited to a single

3   transaction, but rather have affected Mr. Perrone, Ms. Perrone and the class of

4   Washington borrowers they seek to represent.

5       475.   BOA's conduct has been injurious to the public interest as well

6   because it violated provisions of the Washington Consumer Loan Act, Wash. Rev.

7   Code §31.04, *et. seq*. In particular, BOA has engaged in misleading, deceptive

8   and/or fraudulent practices in violation of Wash. Rev. Code §31.04.027(2)

9   because it has engaged in unfair and deceptive practices towards Mr. Perrone, Ms.

10  Perrone and the Washington class of borrowers they seek to represent by virtue of

11  the conduct described herein. The Consumer Loan Act specifically incorporates

12  the Consumer Protection Act and contains a legislative finding that the practices

13  governed by the Consumer Loan Act, "…are matters vitally affecting the public

14  interest." Wash. Rev. Code §31.04.208.

15      476.   BOA's conduct has additionally been injurious to the public interest

16  because it violated Wash. Rev. Code §19.144.080. Wash. Rev. Code §19.144.080

17  makes it "unlawful for any person in connection with…modifying a residential

18  mortgage loan" to engage in fraudulent or misleading activity during the "lending

19  process" or to make, use, or facilitate "any misstatement, misrepresentation, or

20  omission" with the "intention that it be relied on by a mortgage…borrower."

21  Chapter 19.144, *et. seq*. contains a specific legislative statement that the chapter is

22  "necessary to encourage responsible lending, protect borrowers, and preserve

23  access to credit in the residential real estate lending market." Wash. Rev. Code

24  §19.144.005.

25      477.   BOA's misleading representations about the status of Mr. Perrone,

26  Ms. Perrone and the class of Washington borrowers' Agreements are material in

27  that they affected their purchasing decisions relating to their credit and in finding

28  alternative sources of financing to keep their homes.

1    478.   Ms. Perrone and the class of Washington borrowers they seek to

2    represent relied on the statements BOA made to them about the status of their

3    Agreements.

4    479.   Mr. Perrone, Ms. Perrone and the class of Washington borrowers

5    they seek to represent have been injured by virtue of BOA's violations. They have

6    suffered monetary injury by BOA's collection of amounts in excess of what is due

7    and owing under the Agreements and assessment of improper fees and costs on

8    their loan accounts, thereby causing them to lose money. They are at risk of losing

9    their property interests by virtue of BOA putting them into unnecessary default

10   and foreclosure. BOA's misrepresentations as to the amounts due and owing

11   under Agreements and the status of loan accounts has inconvenienced Mr.

12   Perrone, Ms. Perrone and the class of Washington borrowers they seek to

13   represent, who have spent numerous hours attempting to communicate with BOA

14   about its errors.

15   480.   There is a causal link between BOA's unfair and deceptive acts and

16   practices and Mr. Perrone's, Ms. Perrone's and the class of Washington

17   borrowers' injury. But for BOA's breaching of the Agreements, Mr. Perrone, Ms.

18   Perrone and the class of Washington borrowers they seek to represent would be on

19   track with affordable mortgage loans, they would not be put at risk of foreclosure

20   and their credit would be in good standing.

21   481.   Pursuant to RCW 19.182.150, Mr. Perrone, Ms. Perrone and the class

22   of Washington borrowers they seek to represent are entitled to recover reasonable

23   attorney's fees, costs, and expenses incurred in bringing this action.

24                          **PRAYER FOR RELIEF**

25   WHEREFORE, the Plaintiffs respectfully request the following relief on

26   behalf of themselves and the class and their respective subclasses:

27   a.     Certify this case as a class action and appoint the named Plaintiffs to

28          be class representatives and their counsel to be class counsel;

---

**THIRD AMENDED CLASS ACTION COMPLAINT**                          93
Case No. 2:11-cv-04609-AHM (JCx)

1      b.     Enter a judgment declaring the acts and practices of Defendants

2             complained of herein to constitute a breach of contract;

3      c.     Grant a permanent or final injunction enjoining Defendants from

4             continuing to harm Plaintiffs and the members of the class and

5             subclasses, in particular, by requiring Defendants to correct, account

6             for and service Plaintiffs' and class members' mortgage loan accounts

7             as required under the Agreements;

8      d.     Order Defendants to adopt and enforce a policy that requires

9             appropriate training of its employees and agents regarding the

10             servicing, implementation and compliance with permanent loan

11             modifications, and to make changes to its servicing systems to

12             properly administer permanent loan modifications;

13      e.     Order specific performance of Defendants' contractual obligations

14             together with other relief required by contract and law;

15      f.     Order the Defendants to correct Plaintiffs' and class members' loan

16             accounts consistent with the terms of the Agreements;

17      g.     Order the Defendants to correct inaccurate credit reporting relating to

18             the payment history and/or status of Plaintiffs' and class members'

19             loan accounts;

20      h.     Award actual damages and restitution as permitted by law;

21      i.     Award statutory damages as permitted by law;

22      j.     Award the costs of this action, including the fees and costs of experts,

23             together with reasonable attorneys' fees; and

24      k.     Grant Plaintiffs and the class and subclasses such other and further

25             relief as this Court finds necessary and proper.

26                   **<u>DEMAND FOR JURY TRIAL</u>**

27    Plaintiffs demand a trial by jury on all issues so triable.

28

1  Respectfully submitted,

2  Dated:  June 21, 2012                 **COTCHETT, PITRE & McCARTHY, LLP**

3
                                        **KLEIN KAVANAGH COSTELLO, LLP**
4

5                                By:    */s/ Shennan Kavanagh*
                                        Shennan Kavanagh
6
                                        *Attorneys for Plaintiffs*
7

8                              **CERTIFICATE OF SERVICE**
9

10      I, Shennan Kavanagh, hereby certify that under Local Rule 15-3, this

11  amended pleading was deemed served on June 18, 2012, the date on which the

12  Court granted Plaintiffs' motion for leave to amend, to all parties who have

13  appeared in the case.

14

15

16                                       */s/ Shennan Kavanagh*
                                         Shennan Kavanagh
17

18

19

20

21

22

23

24

25

26

27

28